Johnny BEO, Appellee,

v.

DISTRICT OF COLUMBIA, Walter B. Ridley, Director, and Bernard L. Braxton, Administrator, Occoquan Facility, Appellants.

No. 93–7155.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 14, 1994.

Decided Jan. 27, 1995.

Donna M. Murasky, Asst. Corp. Counsel, Washington, DC, argued the cause, for appellants. With her on the briefs were Vanessa Ruiz, Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Lutz A. Prager, Asst. Deputy Corp. Counsel, Washington, DC. John Adolphus Payton, Washington, DC, entered an appearance, for appellants.

David Ober, Washington, DC, argued the cause, for appellee. With him on the brief was Douglas K. Spaulding, Washington, DC.

Before: WALD, SILBERMAN, and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

The District of Columbia appeals from a district court judgment that it violated appellee Johnny Beo's constitutional rights by transferring him from one prison to another in breach of a settlement agreement. We reverse.

## I.

Beo was convicted of rape in the D.C. superior court in 1978 and subsequently incarcerated. In 1987, he began a series of legal challenges to his prison conditions; he sued in our district court protesting his circumstances at Lorton (the D.C. Maximum Security Facility). A settlement was reached between Beo and the District whereby the latter agreed to transfer Beo to Occoquan and keep him there as long as he complied with Occoquan's regulations and his transfer from Occoquan was not otherwise warranted under the District's regulations governing transfer among its prisons. Four years later, in 1991, Beo sued in superior court alleging, inter alia, that he had been transferred back to Lorton in violation of the settlement agreement. Shortly thereafter, on August 8, 1991, this suit too was settled by the District's agreement to transfer to and house Beo at Occoquan "when space becomes available." Later that month, on the 26th, Beo wrote Judge Peter Wolf of the D.C. superior court complaining that he had not yet been transferred to Occoquan. Judge Wolf direct-ed the District to indicate that it was in compliance with the settlement agreement, but by September 6th Beo had already sued again, this time back in federal district court.

Beo's third suit claimed that the District had not only breached both previous settlement agreements but also violated the Due Process Clause of the Fifth Amendment. Beo's allegations focused on the seven times he had been transferred to Lorton subsequent to the first agreement. The case was put to a jury, which determined that none of the transfers violated the first agreement because each was consistent with the District's rules and regulations (i.e., attributed to appellee's disciplinary misconduct, psychiatric problems, or voluntary requests for protective custody). The jury did find, however, that a transfer back to Lorton on November 21, 1991, after the complaint had been filed, violated the second settlement agreement. Beo was awarded $100 damages for his due process claim and another $100 for his supplemental breach of contract claim. The district judge issued an injunction barring Beo's return to Lorton and denied the District's motion for j.n.o.v. based on the argument that no federal constitutional claim had been made out (it had argued that at most the District had breached its contract with Beo under D.C. law). The court held that "a stipulation of settlement between an inmate and prison official creates rights under the due process clause enforceable in district court...." The District now appeals, concerned that any future settlement reached with a litigating inmate challenging his or her conditions of confinement in superior court would create a liberty interest implicating the Due Process Clause and thus giving rise to a federal cause of action. It should also be noted that, by virtue of his constitutional claim, Beo has sought in excess of $100,000 in attorney's fees under 42 U.S.C. § 1988 (1988).

## II.

The Fifth and Fourteenth Amendments' Due Process Clauses guarantee a level of procedural protection before a person's life, liberty, or property can be impinged upon by government. Much of twentieth-

century constitutional jurisprudence has focused on expanding traditional concepts of property and liberty interests, which, in turn, significantly broadened the reach of those clauses. *Joint Anti–Fascist Refugee Comm. v. McGrath,* 341 U.S. 123, 162–63, 71 S.Ct. 624, 643, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring); *see also Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972); *Wolff v. McDonnell,* 418 U.S. 539, 556–57, 94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974). Even so, an inmate in a state or federal prison does not ordinarily have a constitutionally protected liberty interest in his assignment to a particular prison. *Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). Such a liberty interest, however, can stem from state (or federal) statutes or regulations that contain "explicitly mandatory language" restricting prison authorities' discretion to impose conditions on the confinement of inmates or to assign them to particular prisons. *See Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 462–63, 109 S.Ct. 1904, 1909–10, 104 L.Ed.2d 506 (1989) (quoting *Hewitt v. Helms,* 459 U.S. 460, 471–72, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983)). Beo's claim is that the settlement agreements, as contracts between himself and the District, are legal obligations like statutes or regulations, and that they therefore also give rise to a constitutionally protected liberty interest. He, as did the district court in ruling on appellant's j.n.o.v. motion, relied on a First Circuit opinion, *Rodi v. Ventetuolo,* 941 F.2d 22, 26–28 (1st Cir.1991), and a New Jersey district court case, *Dozier v. Hilton,* 507 F.Supp. 1299, 1310–11 (D.N.J.1981).

■ Beo does not really argue, however, that D.C. did not provide adequate process before transferring him to Lorton. (The District points out that he has not asked for any administrative process nor did he pursue fully his legal remedies in the D.C. courts.) Rather, appellee claims that, at least by virtue of the second settlement agreement, the District was obliged to transfer him from Lorton to Occoquan—and, apparently, thereafter not subsequently transfer him back to Lorton for any reason. That contract right against removal, Beo claims, is not only unequivocal and constitutionally protected as a liberty interest, but actually has become a *substantive* due process right. It falls, in other words, among those few rights that the Supreme Court has described as "fundamental" and therefore may not be abridged regardless of the procedure used. *See Rochin v. California,* 342 U.S. 165, 172–73, 72 S.Ct. 205, 209–10, 96 L.Ed. 183 (1952); *Planned Parenthood v. Casey,* —— U.S. ——, —— ––——, 112 S.Ct. 2791, 2804–06, 120 L.Ed.2d 674 (1992).

Although the district court was not precise on the point—the jury found only a "due process violation"—it does appear that the district judge, at least implicitly, accepted Beo's claim that the District abridged a *substantive* due process right. We think, however, that Beo's argument is quite farfetched and, accordingly, reject it. The Supreme Court, recognizing that "the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended," as a result, "has always been reluctant to expand the concept of substantive due process" and therefore its protections "have for the most part been accorded to matters relating to marriage, family, procreation and the right to body integrity." *Albright v. Oliver,* —— U.S. ——, ——, 114 S.Ct. 807, 812, 127 L.Ed.2d 114 (1994) (quoting *Collins v. Harker Heights,* 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992)). Whether or not Beo has a contractual right not to be moved into Lorton, his claim hardly implicates the concerns that have prompted the Supreme Court to declare certain rights fundamental.

We are left, then, with the question whether the settlement agreement created a liberty interest, and, if so, whether the process afforded Beo to protect that interest was constitutionally adequate. Putting aside administrative proceedings, it is not at all clear to us why enforcement in the superior court should be thought inadequate process.

■ As to the existence of such an interest, we think the district court's reliance on *Rodi* and *Dozier* overstated the reach of those cases. To be sure, in *Rodi* and *Dozier,* the prisoners' rights not to be transferred stemmed originally from consent decrees

reached in litigation. But in both cases the state had formally undertaken to extend its obligations under the agreements to all prisoners. In *Rodi*, the state promulgated actual regulations, and in *Dozier* the state apparently accepted guidelines settling a class action as *de facto* rules for prison transfers generally. *See Rodi*, 941 F.2d at 27–28 & n. 6; *Dozier*, 507 F.Supp. at 1303, 1310. Under those circumstances, individual prisoners had gained a liberty interest in their existing conditions of confinement because restrictions on altering those conditions had been embodied in a state-wide practice that gave *all* prisoners a liberty interest.[1]

By contrast, the agreement between Beo and the District allegedly created certain unique and special "rights" that only Beo could claim. The background rules governing intraprison transfers—the applicable "state law," which appellee has not even alleged was violated—remain unaltered. The government can, of course, contract with any of its citizens and assume certain obligations going beyond prevailing statutory or regulatory norms, and such contracts may include settlement agreements terminating litigation. This does not, however, necessarily mean that an individualized agreement, while certainly enforceable in state court, can create a liberty interest under the Fourteenth or, in this case, the Fifth (because the District is governed by federal statutes) Amendment.

Although "mutually explicit understandings" have been held sufficient to create a *property* expectancy entailing process rights, *see Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972), such "understandings" are insufficient to ground a *liberty* interest, *Jago v. Van Curen*, 454 U.S. 14, 21, 102 S.Ct. 31, 36, 70 L.Ed.2d 13 (1981). Where liberty interests are alleged, "[t]he ground for a constitutional claim, if any, must be found in statutes or other rules defining the obligations of the authority." *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465, 101 S.Ct. 2460, 2464, 69 L.Ed.2d 158 (1981). A contract, although it defines obligations, is not such a *general* rule. And while the Supreme Court has never considered whether a contract or settlement, as opposed to an "understanding" of the sort discussed in *Perry* or *Jago*, would be sufficient to establish such a right, that proposition would federalize the enforcement of all settlements reached in litigation between individual prisoners and state prison systems.

Although we think that Beo cannot make out a personal protected liberty interest by virtue of the settlement agreement—and therefore has no due process claim—even if Beo had such an interest, it is not at all clear that the process afforded him would be inadequate. Whether the District would have been obliged to offer Beo predeprivation process is certainly a complicated question, *compare Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) *with Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982) *and Ingraham v. Wright*, 430 U.S. 651, 682, 97 S.Ct. 1401, 1418, 51 L.Ed.2d 711 (1977). It is notable, in this regard, that Beo nowhere asserts that the D.C. transfer process applied to him was in any way procedurally inadequate (or that some sort of additional process was required). *Cf. Hudson v. Palmer*, 468 U.S. 517, 533–34, 104 S.Ct. 3194, 3203–04, 82 L.Ed.2d 393 (1984) (postdeprivation remedy is necessarily sufficient where predeprivation process is impracticable). Nor does he challenge the adequacy of his non-federal remedy in D.C. superior court. The postdeprivation process available under D.C. contract law—specific enforcement requiring the District to transfer Beo to Occoquan, plus damages and

---

1. The same is true of *Lanier v. Fair*, 876 F.2d 243, 250–53 (1st Cir.1989), cited in *Rodi*. While the individual inmate was granted a parole date and based his due process claim in part on the revocation of that individual parole date, the protectible liberty interest flowed from "particularized standards or criteria" governing parole board operation set by state law, which were rules of general application to all inmates. The inmate was also found to have a protectible liberty interest in placement in a halfway house, though again this interest sprang from general regulations and an operating manual governing such placements and transfers. *See id.* 876 F.2d at 246–48. By contrast, Beo's settlement agreement obtains its force of law only through the District's *contractual* regime, albeit enforceable through a court decree after Judge Wolf accepted the settlement and ordered the District to comply with its terms.

an injunction against future breaches—would have secured to him all that he would gain from a suit pursuant to 42 U.S.C. § 1983 (1988) (excepting, of course, recovery of attorney's fees under 42 U.S.C. § 1988). In light of our belief, however, that the settlement agreement did not create a liberty right subject to classic due process analysis, it is unnecessary for us to decide whether the process afforded Beo would be adequate to protect a constitutional interest.

\* \* \*

Accordingly, we reverse the judgment of the district·court and remand with instructions to dismiss the § 1983 suit.

*So ordered.*