UNITED STATES of America, Appellee,

v.

Rohan C. WHITE, Appellant.

No. 95–3003.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 10, 1995.

Decided Dec. 15, 1995.

Carmen D. Hernandez, Assistant Federal Public Defender, argued the cause, for appellant. A.J. Kramer, Federal Public Defender, was on the brief.

Michael N. Levy, Assistant United States Attorney, argued the cause, for appellee. Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Thomas J. Tourish, Jr. and Martin D. Carpenter, Assistant United States Attorneys, were on the brief.

Before: SILBERMAN, SENTELLE and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LECRAFT HENDERSON, Circuit Judge:

In March 1994 appellant Rohan White was arrested and charged with two counts of possessing with intent to distribute both cocaine base (crack) and cocaine hydrochloride (cocaine) in violation of 21 U.S.C. § 841(a)(1) and (b)(1). He faced a mandatory minimum sentence of 10 years. *See* 21 U.S.C. § 841(b)(1)(A)(iii). Pursuant to a plea agreement he pled guilty in May 1994 to one count of conspiracy to possess with intent to distribute at least 50 grams of cocaine and at

least 50 grams of crack in violation of 18 U.S.C. § 371. That statute provides a maximum sentence of 60 months and no mandatory minimum. Thus, as a result of his plea White faced a maximum sentence of 60 months under the United States Sentencing Guidelines. *See* U.S.S.G. § 5G1.1(a). The district court gave him a 6–month downward departure because he was a deportable alien. *See generally United States v. Smith,* 27 F.3d 649 (D.C.Cir.1994). The court rejected his other departure requests and sentenced him to 54 months' imprisonment.

White appeals his sentence on four grounds. First, he argues that the district court erred in denying his request for a substantial assistance departure pursuant to U.S.S.G. § 5K1.1, notwithstanding the government's failure to make the required motion to depart. Second, he contends that the court erred in not granting him a downward departure pursuant to U.S.S.G. § 5K2.0 based on his alleged extraordinary assistance to the government. Third, he argues that the court erred in not granting him a downward departure pursuant to U.S.S.G. § 5K2.13 based on his alleged diminished mental capacity. Fourth, he asks that we remand to let the district court consider a section 5K2.0 departure based on the alleged irrationality of the crack/cocaine sentencing disparity. We address these claims in turn and conclude they are without merit.

## I. Alleged Substantial Assistance

We first address White's claim that the district court erroneously concluded it lacked authority to depart under section 5K1.1, which provides "Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines" based on various enumerated factors. Our review is *de novo*. *United States v. Williams,* 980 F.2d 1463, 1466 (D.C.Cir.1992).

### A.

Immediately after his arrest White provided no timely or valuable information in connection with the offense of which he was convicted and the government was unable to nab his alleged coconspirator.[1] Two months after his arrest White signed a plea agreement which said nothing about his cooperation with the government or the possibility of a substantial assistance motion. While jailed and awaiting sentencing, White began cooperating with the United States Attorney for the Eastern District of Virginia and other authorities in their investigation of certain criminal activity in Virginia. He began cooperating with the hope he would receive a favorable sentencing adjustment but without the government's agreement to that end. The United States Attorney for the District of Columbia, who was prosecuting White, did not learn of his cooperation until shortly before sentencing. The district court postponed sentencing so the Departure Committee could consider the possibility of a section 5K1.1 motion. (In the District of Columbia a departure committee decides whether a defendant's assistance warrants a substantial assistance motion.)

The Departure Committee contacted an Assistant United States Attorney from the Eastern District of Virginia and received in return a letter highlighting the nature of White's assistance. The letter said White had provided valuable information but did not say whether his assistance had been "substantial" or whether a section 5K1.1 motion was warranted. The letter concluded that White's cooperation was not then complete. The United States Attorney for the District of Columbia then filed with the district court a response to White's request for a section 5K1.1 motion and explained that the Departure Committee had denied White's request because it was incomplete and that White ultimately might benefit from a rule

---

1. White was arrested on a Greyhound bus after the police searched a radio in his possession and found a bag of crack and a bag of cocaine. At first White did not tell the arresting officers whether he was traveling with a companion. He later disclosed he was traveling from New York to Virginia with another man who had paid him $1,000 to deliver the drugs to Roanoke. White told the government his companion's name was "Ray" but did not tell the government how to contact Ray, where the drugs came from or any other useful information.

35(b) motion.[2] At the deferred sentencing hearing White asserted that his assistance was substantial and that he deserved a departure. The court explained that it had no authority to depart in the absence of a government motion.

White contends that the government violated his right to due process by arbitrarily refusing to file a section 5K1.1 motion to reward his substantial, albeit incomplete, assistance. The thrust of White's claim is that the government must at the time of sentencing make a good faith determination whether a defendant has provided substantial assistance and cannot be influenced by the availability of a rule 35(b) motion once the defendant completes his post-sentencing assistance. He seeks a remand to give the district court the opportunity to depart, if it chooses, under section 5K1.1. He has preserved the issue for appeal by protesting below that the government arbitrarily and in bad faith refused to file a section 5K1.1 at sentencing based on his assistance at that time. *Cf. Wade v. United States,* 504 U.S. 181, 186, 112 S.Ct. 1840, 1844, 118 L.Ed.2d 524 (1992) (discussed below).

**B.**

Our analysis of White's claim centers on the Supreme Court's opinion in *Wade v. United States, supra.* Defendant Wade pled guilty without the benefit of a plea agreement. He cooperated with the authorities after his arrest but the government made no promise regarding a substantial assistance motion. At sentencing the prosecutor, without explanation, refused to move for a downward departure pursuant to either section 5K1.1 or 18 U.S.C. § 3553(e).[3] The district court did not let Wade question the prosecutor as to why he refused to make a motion. On appeal Wade argued that such an inquiry was necessary to determine whether the prosecutor had acted arbitrarily or in bad faith. *United States v. Wade,* 936 F.2d 169, 171 (4th Cir.1991). The Fourth Circuit affirmed and held that although there was "no disagreement" that Wade "provided valuable assistance to the government," neither a defendant nor a district court may "inquire into the government's reasons and motives if the government does not make the motion." *Id.* at 170, 172. The Supreme Court affirmed in a unanimous decision, although the Court distanced itself somewhat from the Fourth Circuit's broad holding that a prosecutor's refusal to file a substantial assistance motion can never be subject to judicial review.

The Court began by noting that in the absence of a motion by the government a district court has no authority to depart on the basis of a defendant's cooperation with the government. *Wade,* 504 U.S. at 185, 112 S.Ct. at 1843; *see United States v. Doe,* 934 F.2d 353 (D.C.Cir.) (upholding government motion requirement against due process challenge), *cert. denied,* 502 U.S. 896, 112 S.Ct. 268, 116 L.Ed.2d 221 (1991). The Court explained that "the Government has a power, not a duty, to file a motion when a defendant has substantially assisted." 504 U.S. at 185, 112 S.Ct. at 1843. That is, the mere fact that the defendant has rendered substantial assistance does not entitle the defendant to a government motion or, it follows, a reduction in his sentence.

As for the scope of judicial review, the Court concluded that the prosecutor's deci-

---

**2.** Rule 35(b) of the Federal Rules of Criminal Procedure provides in relevant part: "The court, on motion of the Government made within one year after the imposition of the sentence, may reduce a sentence to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an offense...."

**3.** 18 U.S.C. § 3553(e) provides: "Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has

committed an offense...." Some courts have held that a section 5K1.1 motion authorizes the district court to depart only from the guidelines and not below a *statutory* mandatory minimum. They conclude that a section 3553(e) motion is necessary to authorize the latter. *Compare, e.g., United States v. Rodriguez–Morales,* 958 F.2d 1441, 1443–47 (8th Cir.), *cert. denied,* 506 U.S. 940, 113 S.Ct. 375, 121 L.Ed.2d 287 (1992) *with United States v. Ah–Kai,* 951 F.2d 490, 493–94 (2d Cir.1991). The Supreme Court recently granted certiorari to resolve the issue. *Melendez v. United States,* —— U.S. ——, 116 S.Ct. 417, 133 L.Ed.2d 334 (1995).

sion not to file a substantial assistance motion should be treated like other prosecutorial decisions that are "subject to constitutional limitations that district courts can enforce." *Id.* The Court held that "federal district courts have authority to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive." *Id.* at 185–86, 112 S.Ct. at 1843–44 (citing *Wayte v. United States,* 470 U.S. 598, 608–09, 105 S.Ct. 1524, 1531–32, 84 L.Ed.2d 547 (1985) (selective prosecution case which held "the decision to prosecute may not be deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification, including the exercise of protected statutory and constitutional rights") (internal quotation marks and citations omitted)). The Court explained that a defendant is not entitled to a remedy or even to discovery or an evidentiary hearing merely by alleging an unconstitutional motive. Rather, the defendant must make a substantial threshold showing of improper motive. *Id.* 504 U.S. at 186, 112 S.Ct. at 1844.

■ White does not contend the government failed to make a section 5K1.1 motion based on an unconstitutional motive. Instead he seizes on the portion of the *Wade* opinion in which the Court addressed Wade's request for a remand to develop a claim based on the prosecutor's alleged "arbitrary" or "bad faith" withholding of a substantial assistance motion. The Supreme Court said "Wade would be entitled to relief if the prosecutor's refusal to move was not rationally related to any legitimate Government end, *cf. Chapman v. United States,* 500 U.S. 453, 464–65, 111 S.Ct. 1919, 1927–28, 114 L.Ed.2d 524 (1991) [holding a penalty may not be based on arbitrary distinction in violation of due process clause].... " *Wade,* 504 U.S. at 186, 112 S.Ct. at 1844. White argues that the government's refusal to file a section 5K1.1 motion in his case was not rationally related to a legitimate government end.

We disagree. The government has a legitimate interest in having a defendant provide more assistance than less. The difference between incomplete and complete assistance can be the difference between an unsuccessful and successful criminal prosecution. And the government could rationally conclude that the premature filing of a substantial assistance motion might remove the very incentive driving the defendant's cooperation in the first instance, thereby frustrating the government's ability to obtain the remaining assistance it might need for a successful prosecution. It is also rational for the government to assume that if it keeps the carrot dangling in front of the defendant, the defendant will continue to cooperate and complete his assistance even after sentencing, at which point (within one year after sentencing) the government can file a rule 35(b) motion and let the court consider the totality of the defendant's cooperation, both pre- and post-sentence. *See United States v. Drown,* 942 F.2d 55, 59 n. 7 (1st Cir.1991) (on rule 35(b) motion court may "assay the totality of a defendant's cooperation"); *cf. United States v. Forney,* 9 F.3d 1492, 1504 n. 9 (11th Cir. 1993) (suggesting government could review defendant's pre-sentence assistance in rule 35(b) motion provided defendant cooperated after sentencing). *But see United States v. Speed,* 53 F.3d 643, 645 (4th Cir.1995). This is not to say that the availability of a rule 35(b) motion is critical to the reasonableness of a decision not to reward incomplete assistance. Even if rule 35(b) did not exist the government could reasonably conclude, based "simply on its rational assessment of the cost and benefit that would flow from moving," *Wade,* 504 U.S. at 187, 112 S.Ct. at 1844, that it would not be profitable to reward incomplete pre-sentencing assistance: too many such rewards might send the message that a defendant need give only enough assistance between his arrest and sentencing to trigger the "substantiality" threshold but no more. The substantial assistance regime is not a spoils system designed simply to reward a cooperative defendant; it is designed to benefit the government in its prosecution efforts.

The core of White's argument is that it is unfair for the government to keep the carrot dangling in front of him. Fair or not, it is not unconstitutional; no more so than the government's initial dangling of the carrot. This brings us full circle: *Wade* simply does not endorse, in the absence of a plea agree-

ment that includes a substantial assistance provision, a "fairness" or "bad faith" review other than within the constitutional context. *United States v. Kaye,* 65 F.3d 240, 243 & n. 2 (2d Cir.1995); *United States v. Kelly,* 14 F.3d 1169, 1177 (7th Cir.1994). The type of "bad faith" review White seeks—that is, bad faith that does not offend the Constitution—would have been available to him had he sought as part of his plea agreement a conditional commitment from the government to file a section 5K1.1 motion. *See United States v. Jones,* 58 F.3d 688, 692 (D.C.Cir.) (noting that plea agreement with substantial assistance provision "provides additional protection" because "like all contracts, it includes an implied obligation of good faith and fair dealing"), *cert. denied,* —— U.S. ——, 116 S.Ct. 430, 133 L.Ed.2d 346 (1995); *accord Kaye,* 65 F.3d at 242–43.[4]

We acknowledge that White has some authority for the proposition that the due process clause prevents the government from withholding a section 5K1.1 motion and relying instead on the availability of a rule 35(b) motion in order to secure the completion of a defendant's assistance. *See United States v. Drown,* 942 F.2d 55 (1st Cir.1991); *United States v. Martin,* 25 F.3d 211 (4th Cir.1994). His authority, however, does not persuade us.

In *United States v. Drown*—which was decided before *Wade*—the defendant had entered into a plea agreement which included a promise to cooperate with the government but apparently no section 5K1.1 provision. 942 F.2d at 57. The government withheld the section 5K1.1 motion on the ground that Drown's cooperation was *not yet complete* and thus the motion would be premature. *Id.* at 57–58. The government took the position at sentencing that a downward departure was "still an open question" which could be addressed by a rule 35(b) motion within one year after sentencing. *Id.* at 58. On appeal the First Circuit vacated Drown's sen-

tence. The court characterized section 5K1.1 as a sentencing tool designed to recognize assistance rendered *before* sentencing whereas rule 35(b) was designed to reward *post-sentencing* cooperation. *Id.* at 59. The court thought it necessary in order to recognize the "temporal strictures" of section 5K1.1 and rule 35(b) that the prosecutor decide at sentencing whether to file a substantial assistance motion based on a good faith evaluation of the assistance rendered before sentencing and without considering the possibility of a later rule 35(b) motion. *Id.* at 59–60. The court concluded that "a disregard of section 5K1.1's temporal mandate touches upon a criminal defendant's due process rights," *id.* at 60, but did not explain how.

*United States v. Martin*—a post-*Wade* case which remarkably never cited *Wade*—involved a defendant whose plea agreement provided he would cooperate with the government and the government would advise the district court at sentencing of his cooperation but did not commit the government to make a section 5K1.1 motion. 25 F.3d at 213, 217. The government acknowledged at sentencing that Martin's assistance had been substantial but, with Martin's consent, withheld a section 5K1.1 motion because Martin had not yet completed his assistance. *Id.* at 214. The government explained that "oftentimes, once the *motion* is made, the incentive to continue to provide cooperation disappears" and informed the court that it would wait and file a rule 35(b) motion when it could assess the full extent of his cooperation. *Id.* After sentencing, Martin provided no additional assistance to the government. The government made a rule 35(b) motion based on Martin's pre-sentence cooperation and the district court denied the motion on the ground that rule 35(b) was inapplicable without post-sentencing assistance. *Id.* at 215. On appeal the Fourth Circuit used, in

---

4. The plea agreement in *Jones, supra,* contained a provision committing the government to file a section 5K1.1 motion if the Departure Committee determined that the defendant had provided substantial assistance. 58 F.3d at 690. *Cf. United States v. Forney,* 9 F.3d 1492 (11th Cir.1993) (*Wade*'s limitation on judicial review applies un-

less plea agreement contains express promise to file substantial assistance motion); *United States v. Romsey,* 975 F.2d 556, 558 (8th Cir.1992) (similar); *United States v. Burrell,* 963 F.2d 976, 985 (7th Cir.) (similar), *cert. denied,* 506 U.S. 928, 113 S.Ct. 357, 121 L.Ed.2d 270 (1992).

part, the *Drown* analysis to vacate and remand for resentencing, concluding:

> [I]f at the time of sentencing, the government deems the defendant's assistance substantial, the government cannot defer its decision to make a U.S.S.G. § 5K1.1 motion on the ground that it will make a Fed.R.Crim.P. 35(b) motion after sentencing. Instead, the government at that time must determine—yes or no—whether it will make a U.S.S.G. § 5K1.1 motion. If the government defers making a U.S.S.G. § 5K1.1 motion on the premise that it will make a Fed.R.Crim.P. 35(b) motion after sentencing, the sentence that follows deprives a defendant of due process. . . .

*Id.* at 216.

Neither *Drown* nor *Martin* explained how the due process clause figured in the picture. Were they talking about procedural or substantive due process? They never said. White insists they were not talking about procedural due process and he does not assert a procedural due process claim here (his request for a section 5K1.1 motion was considered and rejected by the Departure Committee). Rather, White reads *Drown* and *Martin* as substantive due process cases but he is unable to shed light on how those courts found a substantive due process violation. We do not read the First and Fourth Circuits to suggest there is a "fundamental right" to require the government to decide at sentencing whether it will make a section 5K1.1 motion, a proposition that warrants little comment. *See Beo v. District of Columbia,* 44 F.3d 1026, 1028 (D.C.Cir.1995). And we doubt those courts were suggesting that if the government misunderstands the scope of rule 35(b) it fails to act in accordance with federal law and therefore violates the due process clause. A violation of federal law does not *ipso facto* constitute a due process violation. *See Committee of United States Citizens Living in Nicaragua v. Reagan,* 859 F.2d 929, 943–44 (D.C.Cir.1988); *Steuart v. Suskie,* 867 F.2d 1148, 1150 (8th Cir.1989) ("heavy artillery of constitutional litigation is not available" every time "the government has violated a statute, regulation, or procedure in such a way as adversely to affect 'liberty' ").

White, it appears, contends that *Drown* and *Martin* suggest that the temporal distinction between section 5K1.1 and rule 35(b) creates a liberty interest protected against deprivation by the substantive component of the due process clause. If so, his theory is flawed on several fronts. First, in the procedural due process context, the Supreme Court has noted the "crucial distinction between being deprived of a liberty one has, as in parole, and being denied a conditional liberty that one desires." *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 9, 99 S.Ct. 2100, 2105, 60 L.Ed.2d 668 (1979). The potential lower sentence and earlier release which flow from a substantial assistance departure fall into the "conditional liberty" category; "[t]hat the [government] holds out the *possibility* of [a reduced sentence based on substantial assistance] provides no more than a mere hope that the benefit will be obtained . . . a hope which is not protected by due process," *id.* at 11, 99 S.Ct. at 2105. In this connection neither *Drown* nor *Martin* explained where they were able to find in section 5K1.1 or rule 35(b) any *substantive* limitation on the prosecutor's discretion which might plausibly give rise to a legitimate claim of entitlement and thus a liberty interest. *See Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 462–63, 109 S.Ct. 1904, 1909–10, 104 L.Ed.2d 506 (1989) (government creates protected liberty interest by placing substantive limitations on official discretion), *modified, Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). At best rule 35(b) and section 5K1.1 provide the process a prosecutor is to follow when choosing to exercise his discretion to reward cooperation (move at sentencing for pre-sentencing assistance, move after sentencing for post-sentencing assistance) but the Supreme Court has made clear that there can be no liberty interest absent a legitimate claim of entitlement to a *substantive* interest; "[p]rocess is not an end in itself." *Olim v. Wakinekona,* 461 U.S. 238, 250–51, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983). In any case, even if section 5K1.1 and rule 35(b) could be massaged enough to produce a liberty interest, the fact remains that "substantive due process rights are created only by the constitution," not by federal law. *Re-*

*gents of Univ. of Michigan v. Ewing,* 474 U.S. 214, 229, 106 S.Ct. 507, 515, 88 L.Ed.2d 523 (1985) (Powell, J., concurring) (distinguishing between substantive and procedural due process).

We suspect that *Drown* and *Martin* may have been driven by equitable rather than constitutional concerns. After all, had those courts not intervened, Drown risked getting no credit for his pre-sentencing assistance and Martin would have received no credit for his pre-sentencing assistance. But even if equity concerns were relevant here, we would not lose sight of the fact that "[a]ll the prosecutor can do by withholding a § 5K1.1 motion is insist that [the defendant] be treated according to law, the same as others who committed the same acts and were unlucky enough to have no information of value." *United States v. Smith,* 953 F.2d 1060, 1064 (7th Cir.1992); *see Chapman,* 500 U.S. at 465, 111 S.Ct. at 1927–28. Moreover, the substantial assistance business is inherently risky. When a defendant first decides to cooperate there is no guarantee that the government will ultimately deem his assistance "substantial." In addition, absent a plea agreement, there is no assurance the government will file a section 5K1.1 motion even if the defendant crosses the substantiality threshold; the government has a power, not a duty. *Wade,* 504 U.S. at 185, 112 S.Ct. at 1843. And, of course, if a motion is filed, there is no assurance as to the extent to which the court may be willing to depart, if at all. After all, the government is in the best position to weigh the costs and benefits that flow from not moving under section 5K1.1, *Doe,* 934 F.2d at 358, and has a strong incentive not to abuse its authority, *id.* at 362 (D.H. Ginsburg, J., concurring). "The government's strong institutional interest in ensuring the continued assistance of future defendants affords protection against prosecutorial parsimony in applying section 5K1.1." *Id.* at 358.

■ In conclusion, absent either (1) a plea agreement committing the government to file a section 5K1.1 motion if it determines that the defendant provided substantial assistance or (2) a substantial threshold showing that the government's decision not to file a sub-

stantial assistance motion was based on an unconstitutional motive or, improbably, unconstitutional in the sense the decision was not rationally related to a legitimate government end, *Wade* makes clear that a federal court has no authority to conduct an "arbitrary and capricious" or "abuse of discretion" or "bad faith" review of the government's decision. Consequently, White's section 5K1.1 claim fails.

## II. Alleged Extraordinary Assistance

■ As noted, in the absence of a government motion the district court has no authority to depart under section 5K1.1. Consequently, White asked the district court, in the alternative, to depart under section 5K2.0 to recognize his alleged extraordinary assistance. The district court refused and White complains the court underestimated the full extent of its authority to depart. White says the court had authority to depart under section 5K2.0 because his assistance was both "of a kind" and "to a degree" not adequately considered by the United States Sentencing Commission (Commission) when it drafted section 5K1.1. *See* section 5K2.0 (court may depart if it finds "that 'there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines' " (quoting 18 U.S.C. § 3553(b))). First, he argues that by cooperating with the government he confronted a risk of danger "to a degree" not adequately considered by the Commission. Second, he contends he provided substantial assistance "of a kind" not taken into account by the Commission insofar as he substantially assisted the "administration of justice" by the judicial branch. We review *de novo* whether a district court has authority to depart under section 5K2.0 and look to see whether the Commission adequately accounted for the circumstances at issue. *United States v. Harrington,* 947 F.2d 956, 957 (D.C.Cir.1991).

■ We first reject White's claim that a district court has authority to depart under section 5K2.0 if a defendant exposed himself to an extraordinary degree of risk or danger by cooperating with the government in its

investigation or prosecution of others. *See United States v. Watson,* 57 F.3d 1093, 1096–97 (D.C.Cir.1995) (per curiam); *United States v. Chotas,* 968 F.2d 1193, 1195–96 (11th Cir.1992) (per curiam) (holding section 5K1.1 adequately comprehends situation where defendant exposed himself to "meaningful" degree of danger). The Commission explicitly included "*any* danger or risk of injury to the defendant or his family resulting from his assistance" as a factor to be considered by the district court in determining the appropriate extent of a section 5K1.1 departure. *See* U.S.S.G. § 5K1.1(a)(4) (emphasis added). The Commission's use of the modifier "any" is strong evidence that section 5K1.1 contemplates all kinds and degrees of danger and risk. Moreover, we are confident the Commission did not overlook the fact that defendants frequently assist investigations and prosecutions of criminal activities involving violent individuals and thus frequently expose themselves to the risk of serious injury and perhaps death.

■ White's other section 5K2.0 theory fares no better. White argues that section 5K1.1 does not adequately contemplate that a defendant's assistance might benefit not the executive branch but instead the "administration of justice" by the judicial branch. We disagree. First, White did assist the executive branch (the Department of Justice and the Federal Bureau of Investigation) and therefore his assistance was of a kind contemplated by the Commission regardless of the potential downstream beneficiaries of his assistance. *See United States v. Dorsey,* 61 F.3d 260, 262 (4th Cir.1995) (holding district courts have no authority to depart under section 5K2.0 to recognize "benefit to the judicial system" from defendant's cooperation and stating, "We can envision no circumstance in which 'assistance to the judicial system' would not also be of assistance to the Government [covered by section 5K1.1].")*; cf. Chotas,* 968 F.2d at 1195–96 (section 5K1.1 adequately comprehends that "society" might benefit from defendants' assistance). Second, it would be the unusual case if the administration of justice were *not* benefitted in some way by a defendant's substantial assistance in the investigation and prosecution of criminal activities. *United States v.*

*Shrewsberry,* 980 F.2d 1296, 1297–98 (9th Cir.1992) (per curiam) (rejecting claim identical to White's and noting "[i]t is difficult to imagine any material assistance to the prosecution that does not aid the courts in the administration of justice"), *cert. denied,* —— U.S. ——, 114 S.Ct. 120, 126 L.Ed.2d 84 (1993). Third, through section 5K1.1(a) the Commission has considered the "significance and usefulness" and "nature" of the defendant's assistance, which is precisely what White seeks *via* section 5K2.0.

■ We thus conclude that the circumstances of White's assistance were of a kind and to a degree contemplated by section 5K1.1 and therefore the district court did not err in declining White's request for a section 5K2.0 departure. More fundamentally, our analysis of section 5K1.1 leads us to conclude that the circumstances surrounding a defendant's cooperation with the government can *never* be of a kind or degree not adequately contemplated by the Commission. "Cooperation with the prosecutors simply cannot be sufficiently extraordinary to warrant a departure under § 5K2.0 absent a government motion under § 5K1.1." *United States v. Aslakson,* 982 F.2d 283, 284 (8th Cir.1992) (per curiam). To hold otherwise "would undermine, if not eviscerate," the government motion requirement of section 5K1.1 (a requirement important enough for Congress to expressly so provide in 18 U.S.C. § 3553(e)). *Watson,* 57 F.3d at 1096. This is not to say that the facts of each case will not vary or that all assistance is the same, which is why section 5K1.1 provides for consideration of, among other things, the *nature, extent, significance* and *usefulness* of a defendant's assistance, U.S.S.G. § 5K1.1(a)(1), (3); *see* U.S.S.G. § 5K1.1 Commentary ("The nature, extent, and significance of assistance can involve a broad spectrum of conduct that must be evaluated by the court on an individual basis."), and allows for an unlimited departure (except perhaps where a mandatory minimum sentence is involved, *supra* note 3), *see United States v. Baker,* 4 F.3d 622, 624 (8th Cir.1993) (allowance for unlimited departure manifests that section 5K1.1 cannot recognize assistance inadequately). "The fact that a district court may not reward such

assistance without a motion by the Government does not diminish the adequacy of the consideration given by the Sentencing Commission to the appropriate treatment of cooperating defendants." *Dorsey*, 61 F.3d at 262. We hold, then, that a district court has no authority to depart under section 5K2.0 to consider the circumstances, including the degree of any risk and the recipient of any assistance, surrounding a defendant's cooperation with the government.

### III. Alleged Diminished Mental Capacity

U.S.S.G. § 5K2.13 generally authorizes a downward departure if the defendant suffered from significantly reduced mental capacity which contributed to the commission of his offense.[5] At the request of White's counsel, the court appointed a psychologist to examine White. The psychologist determined that White had an IQ of 67 (according to the Wechsler Adult Intelligence Test) and thus concluded that White was mildly retarded and had a reduced mental capacity. The psychologist also noted that White was "able to think and reason rationally and logically," showed "no indications of any significant mental or emotional impairment," and displayed adequate judgment considering his cultural differences (he emigrated from Jamaica a few years before his offense). Government's Brief at 5. Having had the opportunity to observe and interact with White at the plea and sentencing proceedings, the district court disregarded the significance of the IQ score and decided not to depart downward under section 5K2.13. White argues that the district court erred in rejecting the psychologist's conclusions.

"We will not review the decision of a sentencing judge not to provide a downward departure in sentencing a defendant absent a mistake of law or an incorrect application of the sentencing guidelines." *United States v. Johnson*, 49 F.3d 766, 768 (D.C.Cir.1995). Here, the district court's refusal to depart is beyond our review because the court was aware of its authority to depart for diminish-

ed mental capacity contributing to the commission of the offense. The court simply chose not to exercise its discretion in light of its own assessment of White and its experience with other defendants who labored under reduced mental capacities. And contrary to White's suggestion, there is nothing in the record to suggest the district court failed to understand that section 5K2.13 focuses on the defendant's mental capacity at the time of his offense as opposed to his potential capacity.

### IV. Alleged Irrationality of Crack/Cocaine Disparity

White seeks a remand so the district court can also consider a section 5K2.0 departure on the basis of the Commission's proposed amendment abolishing the sentencing disparity between crack and cocaine set out in section 2D1.1 of the guidelines, equating 1 gram of crack to 100 grams of cocaine. 60 Fed.Reg. 25074 (May 10, 1995). After oral argument in this case, Congress disapproved the proposed amendment, leaving the crack/cocaine ratio in place. P.L. 104–38, 109 Stat. 334 (Oct. 30, 1995) (ordering Commission to conduct further studies and present new recommendations to Congress). The district court has no authority to override Congress and "enact" (*via* section 5K2.0) the Commission's proposed amendment. *See United States v. Thompson*, 27 F.3d 671, 678–79 (D.C.Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 650, 130 L.Ed.2d 554 (1994). We therefore reject his claim.

For the foregoing reasons White's sentence is

*Affirmed.*

---

5. U.S.S.G. § 5K2.13 states in full: "If the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public."