**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellant,</u>

v.                                                                                      No. 96-6043

KIM LUCRETIA COPELAND,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
John A. MacKenzie, Senior District Judge.
(CA-93-156-N)

Argued: October 28, 1996

Decided: September 11, 1997

Before WIDENER and ERVIN, Circuit Judges, and BULLOCK,
Chief United States District Judge for the
Middle District of North Carolina, sitting by designation.

_____

Affirmed by unpublished opinion. Judge Ervin wrote the opinion, in
which Judge Widener and Chief Judge Bullock joined.

_____

**COUNSEL**

**ARGUED:** Fernando Groene, Assistant United States Attorney, Nor-
folk, Virginia, for Appellant. Bruce Christopher Sams, Norfolk, Vir-
ginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United States
Attorney, Norfolk, Virginia, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

ERVIN, Circuit Judge:

The government appeals the district court's decision to grant Kim Copeland (Copeland) a sentence reduction pursuant to Federal Rule of Criminal Procedure 35(b), arguing that the court was without power to make such a reduction absent a motion by the government. For the reasons hereinafter explored, we affirm Copeland's reduced sentence.

I

In November 1993, Copeland and ten others were charged, in an eighty five count indictment, with numerous narcotics offenses. On January 20, 1994, Copeland pleaded guilty to conspiracy to possess with intent to distribute in excess of 50 grams of crack. The plea agreement she entered provided that Copeland would cooperate with the United States in its investigations, would testify at trials and grand jury proceedings, and would submit to polygraph tests at the request of the United States. The agreement also provided that the government reserved its option to move the court for a sentence reduction based upon substantial assistance if the government,"in its sole discretion," determined that such assistance had been rendered.

By the end of January, 1994, seven of the eleven indicted conspirators had entered guilty pleas and agreed to testify against their co-conspirators. Two of the remaining four conspirators, Howard Hudson and Michael Hunter, were scheduled to stand trial, and the remaining two indicted conspirators were still at large. The Hudson/Hunter trial, conducted in March 1994, lasted five days. Copeland testified on behalf of the prosecution for the first day and one-half of the trial. Copeland testified extensively despite the fact that she and Hudson had been romantically involved and she still had strong feelings for him. The jury ultimately convicted Hudson on eighteen

2

counts related to drug offenses and convicted Hunter on one conspiracy count. Hudson received a sentence of life plus 300 months and Hunter received a sentence of 235 months imprisonment.

Copeland was sentenced in May 1994. The sentencing court was at odds with the government regarding the appropriate sentences for several of the conspirators who had pleaded guilty. With respect to Copeland, the government sought life imprisonment and several specific sentencing enhancements. The court declined to give Copeland an enhancement for her alleged role in the conspiracy and for her alleged possession of a firearm in the course of the conspiracy, finding that there was no evidence to support either enhancement. The court also found that the very high quantity of drugs upon which the government based its request for a life sentence could only be proven by Copeland's own statements given to the government in the course of her cooperation. Because the evidence was the fruit of her cooperation, the court concluded that it would violate Copeland's plea agreement to use that information against her in sentencing, and therefore sentenced her based upon a much lower quantity of drugs. The court sentenced Copeland at the bottom of her Guideline range, to 168 months imprisonment. The government initially sought to appeal the court's denial of its sentencing requests but later withdrew its motion.

At Copeland's sentencing hearing the government declined to make a motion for downward departure, but indicated that it would likely make such a motion at a later time. Copeland continued to cooperate with the government after her sentencing. She was prepared by the government to testify before the grand jury against unindicted narcotics co-conspirators. Although Copeland was willing to testify, she continually denied knowledge of the involvement of one of the government's targets in the conspiracy, Kiddy Campbell. Copeland agreed to take, but failed, a polygraph test to confirm the information she gave denying the involvement of Campbell. Because she would not incriminate Campbell, the government declined to use her testimony to secure his indictment.

After all the conspirators had been sentenced, the government moved for downward departures for the other six conspirators who had cooperated with the government. The court granted each motion and significantly reduced each defendant's sentence. The government

3

did not move for a departure for Copeland alone, citing Copeland's inability to incriminate Campbell and her failure on the polygraph test. The government also asserted that during at least one of Copeland's debriefings and during her own sentencing hearing, she minimized the extent of the overall conspiracy below the level she had originally described, and below the level that the government believed was accurate.

One year after her sentencing, Copeland herself moved the court to reduce her sentence pursuant to Federal Rule of Criminal Procedure 35(b). An evidentiary hearing was held on the issue. The district court concluded that the government's refusal to depart downward for Copeland when it did so for each of her six fellow cooperators, whose assistance to the government had been much less, was not rationally related to a legitimate government end. The court found that the record and his own observation of the Hunter/Hudson trial proved that Copeland rendered substantial assistance and that she was essential to securing both convictions. Finally, although the government submitted to the district court evidence of Copeland's poor behavior in prison and argued that such behavior justified the government's refusal to make a Rule 35(b) motion, the sentencing court declined to find that her discipline problems bore any relationship to her compliance with the plea agreement. After concluding that the government had no rational basis for denying Copeland a motion for downward departure, the court granted a departure down to 75 months, which the court noted was proportional to the departures granted to other defendants. The government now appeals that decision.

II

The issue before us is whether the district court erred in finding that the government's failure to move for a downward departure for substantial assistance was not rationally related to a legitimate government end and in therefore granting a downward departure absent a government motion. On the unique facts of this case, we affirm the lower court's decision.

A

We have fashioned a sliding-scale standard of review for use in appeals involving application of the Sentencing Guidelines. United

4

States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989). Factual findings made by the district court in connection with a sentencing decision are reviewed for clear error while legal interpretations of the Guidelines are reviewed de novo. Id.; see also United States v. Blake, 81 F.3d 498, 503 (4th Cir. 1996). Therefore, in this case we will give deference to the factual findings underlying the district court's conclusion that the government had no rational basis for denying Copeland a downward departure. However, we will review closely the legal conclusion that those facts do not constitute a rational basis for government policy.

B

Three provisions of federal law address departure downward from the Sentencing Guidelines and from congressionally-mandated statutory minimums as a reward for substantial assistance: § 5K1.1 of the Sentencing Guidelines, 18 U.S.C. § 3553(e), and Rule 35(b) of the Federal Rules of Criminal Procedure. In the instant case, Rule 35(b) is implicated because it alone covers departure motions made after sentence has initially been entered.

Rule 35(b) provides:

> Reduction of Sentence for Changed Circumstances.  The court, on motion of the Government made within one year after the imposition of the sentence, may reduce a sentence to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an offense, in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code. . . . The court's authority to reduce a sentence under this subsection includes the authority to reduce such sentence to a level below that established by statute as a minimum sentence.

Although U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e) are not directly implicated in the instant decision, our previous interpretations of those provisions are certainly relevant and useful when addressing Rule 35(b).

5

C

The law governing downward departures for substantial assistance is well established. In Wade v. United States , 504 U.S. 181, 185 (1992), the Supreme Court decided that the plain language of § 3553(e) permits only the government to move for a departure to reward cooperation. The Court found that the government has a power, but "not a duty," to file a motion when a defendant has substantially assisted. The Court recognized only two narrow exceptions to this rule: a defendant may have relief from the district court when the government's failure to file a substantial assistance motion is based upon an unconstitutional motive, such as racial or religious animus, or when the decision not to make the motion is"not rationally related to any legitimate Government end." Id. at 185-86.

We have followed the Supreme Court's lead and interpreted the Wade exceptions narrowly, generally holding that the decision not to make a downward departure motion is properly within the government's power. See, e.g., United States v. Maddox, 48 F.3d 791, 795-96 (4th Cir. 1995) (reversing district court's decision to grant downward departure pursuant to § 5K1.1 and 18 U.S.C. § 3553 absent motion from the government); United States v. Wallace, 22 F.3d 84, 87-88 (4th Cir. 1994) (affirming district court's refusal to depart for substantial assistance absent government motion). We have never, however, held or implied that government discretion in this arena is unfettered. See, e.g., United States v. Dixon, 998 F.2d 228, 231 (4th Cir. 1993) (holding that because defendant had provided substantial assistance, government had to fulfill promise to move for downward departure at sentencing). We reaffirm today the importance of the constitutional constraints placed on government power in the realm of substantial assistance.

We agree with the court's analysis that the government's refusal to request a departure in this case was not rationally related to any legitimate government end. However, we limit our holding in this respect to the unique facts of the case before us.

As an initial matter, we are persuaded that the court below had a great deal of knowledge about the unique facts and circumstances of all aspects of this case. The district court presided over many proceed-

6

ings related to Copeland's case and the cases of her co-conspirators and has direct knowledge of the assistance she provided. The court was in a unique position to judge Copeland's cooperation in comparison with the six other conspirators who received a downward departure and to determine whether the distinction the government made in denying a departure to Copeland alone was a legitimate and rational one.

We specifically affirm several of the district court's factual findings and agree that they support the conclusion that the government's decision in this case was not rationally related to a legitimate government end. First, the court found that Copeland's extensive cooperation with the government constituted substantial assistance. The court found the government's attempt to characterize Copeland's participation at the Hudson/Hunter trial as not helpful to be disingenuous. It is apparent from the record that Copeland's cooperation was essential to the convictions secured at that trial. In our unpublished opinion affirming Hunter and Hudson's convictions, United States v. Hudson, No. 94-5392 (4th Cir. Dec. 7, 1995), we named Copeland as a cooperating witness and relied in part upon information she provided.

Second, the district court refused to find that Copeland was minimizing the scope of the conspiracy when she testified and when she met with government agents, and we agree with this conclusion. The court credited Copeland's estimates of the quantities of drugs involved at various points in the conspiracy more than the "generalized and unsubstantiated estimates provided by an obviously overzealous law enforcement officer with an interest in enlarging the proverbial notch on his belt." Moreover, the district court was rightly troubled by the government's implication that if a witness cooperates, but gives information other than that which the government had expected, the government can say that the defendant failed to cooperate.

Third, the court found that the government, in not requesting a departure, was motivated by the fact that Copeland could not implicate one of their investigation's targets, Kiddy Campbell. However, the district court credited testimony that Copeland had not seen Campbell conduct any drug deals and had never participated in illicit activity with him. The district court concluded that she had not been

7

dishonest when she told prosecutors that she lacked knowledge that Campbell was a drug dealer.[1]

One fact which supports the government's decision not to seek a departure in this case is that Copeland did not completely pass a polygraph examination. Specifically, the test suggested that she was not fully truthful when asked if she had given the complete truth about Kiddy Campbell. However, the district court made several findings regarding the polygraph examination and, upon examination of the record, we agree with those findings. The court discredited the polygraph result as unreliable given the circumstances of the examination and the types of questions asked, and found the test to be inadmissible for any purpose. The court further found that, at worst, the false statement represented only one error during numerous debriefings by the government and during days of testimony. The district court was particularly convinced about Copeland's honesty with respect to Campbell because she had testified so completely and damningly against Hudson, a man with whom she was in love. The court reasoned that there was a strong presumption against Copeland lying to protect Campbell, a man she scarcely knew, when she had fully incriminated Hudson. Furthermore, the court was able to make its own credibility determinations about Copeland's cooperation when she testified extensively and under strenuous cross-examination at the hearing on her Rule 35(b) motion. Given these facts, the court declined to find that the single polygraph question provided a rational basis for denial of a downward departure and we agree.

We believe that the district court's factual findings are thoroughly supported by the record and the government has not shown us that any of those findings are clearly erroneous. We further agree with the conclusion that, based upon these facts, the government's decision not to request a downward departure was not rationally related to any legitimate government end.

_____

[1] It is noteworthy that Copeland's plea agreement bound her to testify truthfully, not to exclusively provide inculpatory evidence regarding other conspirators or evidence which supports the government's case.

III

Although we agree with the above factually-grounded reasoning upon which the district court based its decision to depart, we conclude that the same result is independently mandated by our decision in United States v. Martin, 25 F.3d 211 (4th Cir. 1994).**2** In Martin the defendant pleaded guilty and his plea agreement, like the one Copeland signed, allowed the government, in its sole discretion, to make a motion for downward departure pursuant to either§ 5K1.1 or Fed. R. Crim. P. 35(b). Id. at 213. Martin cooperated significantly, and, at his sentencing, the government told the court that it intended to make a downward departure motion at a later time to reward his cooperation. The government wanted the defendant to continue to cooperate in the meantime and perhaps secure an even greater reduction in his sentence. Id. at 214. After sentencing, however, Martin had no opportunities for further cooperation. The government made a Rule 35(b) motion for downward departure to reward him for the cooperation he had provided prior to sentence. Id. at 215. However, the district court held that Rule 35(b) only allowed departure for cooperation after sentencing and that § 5K1.1, employed at the time of sentencing, was the proper vehicle to reward presentence assistance. The court felt that because of this it could not reward Martin for his presentence cooperation. Id. at 215. Martin and the government joined in an appeal of that decision.

On appeal, we found that the district court's reading of the applicable provisions to require § 5K1.1 motions to encompass pre-sentence cooperation and Rule 35 motions to cover post-sentence cooperation was correct. However, we did not agree that no relief was available to Martin. Id. at 216. We held that the government cannot delay a request for downward departure until after sentencing where a depar-

---

**2** Martin is still good law in this circuit. See, e.g., United States v. Speed, 53 F.3d 643, 645 n.3 (4th Cir. 1995) (stating that Martin is still binding authority, absent intervention by the en banc court or revision of Rule 35(b) by Congress). We note, however, that Judge Ellis' concurrence in Speed, 53 F.3d at 647, questions whether Martin's interpretation of Rule 35 is valid, and the District of Colombia Circuit criticized the Martin decision and declined to follow it in United States v. White, 71 F.3d 920, 926 (D.C. Cir. 1995).

ture would be proper in light of pre-sentencing assistance. Id. at 216. We reasoned:

> If the government defers making a U.S.S.G. § 5K1.1 motion on the premise that it will make a Fed. R. Crim. P. 35(b) motion after sentencing, the sentence that follows deprives a defendant of due process, and is therefore "in violation of law."

Id. at 216 (internal citations omitted). We concluded that cases such as Martin should be remanded to allow the government to consider anew the assistance at the time of sentencing and whether it merited a departure. Id.

Martin's reasoning supports the district court's decision in this case to grant Copeland relief from the government's refusal to make a downward departure motion. It is clear that Copeland would have received a motion for downward departure had the government made its decision at the time of sentencing. All of the government's proffered reasons for declining to seek a departure occurred after Copeland was already sentenced, and her cooperation before sentencing was undeniably significant. Therefore, pursuant to Martin the government should not have been allowed to continue to withhold a departure motion from Copeland given that she had, as of sentencing, substantially assisted.

IV

In sum, we agree with the district court's decision to grant Copeland a downward departure for her substantial assistance. The government's decision not to seek such a departure in this case is not rationally related to a legitimate government end; that decision also violates Copeland's Due Process rights as we warned of in Martin. The district court crafted an appropriate remedy when it granted Copeland a downward departure commensurate with those received by her fellow cooperators. Therefore Copeland's reduced sentence is

AFFIRMED.

10