UNITED STATES of America, Appellee,

v.

Peter Alden DROWN, Jr., Defendant, Appellant.

No. 91–1118.

United States Court of Appeals, First Circuit.

Heard May 9, 1991.

Decided Aug. 14, 1991.

---

Claudia C. Sharon, Portland, Me., for defendant, appellant.

Margaret D. McGaughey, Asst. U.S. Atty., with whom Richard S. Cohen, U.S. Atty., and Nicholas M. Gess, Asst. U.S. Atty., Portland, Me., were on brief, for the U.S.

Before CAMPBELL and SELYA, Circuit Judges, and COFFIN, Senior Circuit Judge.

SELYA, Circuit Judge.

This is another in the long line of appeals which have ensued as courts and litigants struggle to master the intricacies of the federal sentencing guidelines. In this instance, defendant-appellant Peter Alden Drown, Jr., was sentenced to a 78–month term of imprisonment (a sentence which came within, but was at the bottom end of, the applicable guideline sentencing range). Drown does not contest the district court's interim calculations or its determination of the appropriate sentencing range. Rather, in this appeal, he disputes only the court's refusal to depart downward under U.S.S.G. § 5K1.1.[1] He contends that he rendered assistance to the prosecution of such great value that the judge, despite the absence of a government motion, should have departed downward *sua sponte.* He also contends that the prosecutors' decision to defer the question of whether to file a departure motion until Drown's cooperation was completed violated due process. Although the first of these contentions cannot overcome the bar of *stare decisis,*[2] the second merits our careful attention. And because the government's failure to file a motion

---

1. The guideline provision reads:

   Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

   U.S.S.G. § 5K1.1 (policy statement).

2. This case was argued to us on the same day as *United States v. Romolo,* 937 F.2d 20 (1st Cir.

1991). We have since decided *Romolo,* holding squarely "that, without a government motion, a sentencing court cannot depart downward under U.S.S.G. § 5K1.1, despite meanspiritedness, or even arbitrariness, on the government's part." *Id.* at 24 (footnote omitted). We see no reason either to rehearse or revisit that discussion today. Hence, we treat substantively only that aspect of Drown's appeal which invokes his due process rights.

under section 5K1.1 was based in significant part on a mistaken belief that its decision could legitimately be deferred, we vacate Drown's sentence.

## I. BACKGROUND

On January 22, 1990, Drown signed an agreement with the government to plead guilty to a one-count criminal information charging him with conspiracy to possess with intent to distribute in excess of 500 grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. In the plea agreement, he promised to cooperate with government agents in the investigation of other drug-related offenses. Drown proved to be a multiloquent catch. He submitted to a prolonged debriefing which the Assistant United States Attorney (AUSA) termed "extensive" and "complete." This debriefing led directly to the apprehension of Armand and Timothy Veilleux, father and son, whom the AUSA described as "significant cocaine trafficking targets." At that point, Drown left the jurisdiction.[3] He was subsequently arrested and returned to Maine. He then executed a new plea agreement, which contained the same provisions as did the first.

On June 25, 1990, Drown pled guilty to the criminal information at a Rule 11 proceeding convened in the United States District Court for the District of Maine. Thereafter, he resumed his assistance to the government. In December of 1990, at an evidentiary hearing held in conjunction with Drown's scheduled sentencing, the government acknowledged that his post-plea cooperation was significant in at least four respects.

1. Drown testified at Timothy Veilleux's criminal trial. According to the AUSA, Drown was "a major and important witness," who "testified with great detail, good memory, [and] good recollec-

tion," and who withstood eight hours of grueling cross-examination.

2. Drown provided information to the Drug Enforcement Administration and the Immigration and Naturalization Service regarding a cocaine trafficking organization run by natives of the Dominican Republic in the Lewiston, Maine area. As of December 1990, the investigation was still ongoing. The government anticipated that Drown would render additional cooperation in the ensuing weeks.

3. Drown tendered worthwhile information in two other cases. In each instance, the proffer resulted in an indictment. Further details were unavailable inasmuch as the indictments were secret and none of the suspects had yet been arrested. The AUSA expected that, if these cases were tried, Drown would be a prime witness.

4. Drown had come forward with additional information, not yet fully explored, which the AUSA conceded could "be of assistance to the government."

Notwithstanding this record of productive collaboration, the government refused to reciprocate by moving for a section 5K1.1 departure. The decision to withhold a section 5K1.1 motion, the AUSA said, was predicated on four factors: (1) that Drown's cooperation was not yet complete; (2) that he committed perjury before the grand jury regarding the Veilleux case;[4] (3) that, after first agreeing to cooperate, Drown nevertheless tried to sell some 15 pounds of "leftover" marijuana; and (4) that Drown then fled the jurisdiction. Although mentioning the latter three reasons, the AUSA left no doubt that the main reason behind the decision to defer serious consideration of a departure motion was the fact that Drown remained a potential wellspring of future assistance, both as a likely witness and as a source of incremental information. Because the government

---

**3.** The AUSA told the district court that Drown fled under pressure from his friend, Timothy Veilleux, who knew that Drown "was a damning witness."

**4.** At Veilleux's trial, Drown admitted the lie and recanted the grand jury testimony. During the proceedings leading up to Drown's sentencing,

the government "accept[ed] [Drown's] explanation ... that he was trying to protect a friend [Timothy Veilleux] by minimizing that friend's role." The government also acknowledged that, save for this single slip, Drown's statements had proven to be "honest and truthful."

viewed Drown's cooperation as incomplete, it thought a departure motion would be premature. The government took the position that downward departure was "still an open question" which could subsequently be addressed under Fed.R.Crim.P. 35(b):[5]

> [T]he government's view is that this defendant who has not yet completed his cooperation, should not at this time have such cooperation rewarded in the form of a motion for departure.

We believe that Congress and the United States Supreme Court promulgated rule 35 as now exists for the expressed purpose of permitting cooperation to continue for at least a year after the entry of judgment. And ultimately that leaves the government in a better position to assess a defendant's assistance to it, thus giving the government a better opportunity to provide the Court an explicit motion for departure under rule 35, and ultimately provides the Court a better ability to assess the defendant's cooperation.

The district court found the government's reasons for eschewing a departure motion to be "facially reasonable," concluding that the government "gave fair and sufficient consideration to whether or not this defendant was entitled to have a downward departure...." The court proceeded to sentence Drown within the applicable guideline sentencing range.

## II. APPELLATE JURISDICTION

Drown challenges his sentence on the theory that the government, by basing its unwillingness to file a section 5K1.1 motion on an impermissible factor, infringed his due process rights. The government argues that we lack jurisdiction to consider this aspect of the appeal. We disagree.

When a defendant unsuccessfully challenges not the judge's exercise of discretion but the constitutionality of the scheme under which he was sentenced, the court of appeals has appellate jurisdiction under 18 U.S.C. § 3742(a)(1).[6] *See United States v. La Guardia*, 902 F.2d 1010, 1012 (1st Cir.1990); *United States v. Tholl*, 895 F.2d 1178, 1180 n. 2 (7th Cir.1990); *cf. United States v. Tucker*, 404 U.S. 443, 448–49, 92 S.Ct. 589, 592–93, 30 L.Ed.2d 592 (1982) (illustrating that, even before the Sentencing Reform Act liberalized the right to appeal from sentencing decisions, a defendant could appeal if the sentencing court relied on improper information). To the extent that the government's reason for withholding action in this case conflicts with the temporal strictures of section 5K1.1 (and, by implication, those of Fed. R.Crim.P. 35(b)), due process concerns are raised. Hence, we may review the sentence under 18 U.S.C. § 3742(a)(1) to determine whether it was imposed in violation of law. *See United States v. Howard*, 902 F.2d 894, 896 & n. 4 (11th Cir.1990) (the question of whether the district court erred by postponing its ruling on a section 5K1.1 motion until the defendant's assistance was completed could be reviewed under 18 U.S.C. § 3742(a)(1)); *see also Romolo*, 937 F.2d at 24 n. 4 (suggesting, in the section 5K1.1 milieu, that the exercise of prosecutorial discretion in contravention of constitutionally or statutorily protected rights would constitute an appealable event).

## III. THE MERITS

We need not tarry in respect to the single remaining issue. Neither party disputes that the government based its unwillingness to file a section 5K1.1 motion in substantial part on its stated belief that assessing defendant's cooperation at the time of his scheduled sentencing would be premature, preferring instead to wait until the proceedings Drown helped to trigger had run their course. Indeed, at oral argument before us, the AUSA freely conceded that this factor played a primary role in the prosecution's decision not to file the gate-

---

**5.** Rule 35(b) provides, in pertinent part:

The court, on motion of the Government, may within one year after the imposition of a sentence, lower a sentence to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an offense....

**6.** The statute confers appellate jurisdiction in regard to sentences "imposed in violation of law." 18 U.S.C. § 3742(a)(1).

opening motion. We think it plain that part of the government's strategy was to keep the carrot dangling just out of Drown's reach, thereby continuing the incentive that prompted his presentence cooperation into the post-sentence period. To conclude otherwise would require an act of faith which we are simply not prepared to undertake.

■ We do not question the honorableness of the prosecutors' intentions or the likely efficacy of their strategy. We believe, however, that this strategy, insofar as it assumes that the government, at sentencing, may postpone its evaluation of a defendant's assistance until the defendant's services are completed, improperly merges the temporal boundaries established in section 5K1.1 and Fed.R.Crim.P. 35(b), respectively. The language, structure, context, and operation of these provisions leaves little doubt that the guideline provision, section 5K1.1, was designed to recognize, and in an appropriate case to reward, assistance rendered *prior* to sentencing. Rule 35(b), on the other hand, was designed to recognize and reward *subsequent* cooperation. The rule speaks expressly to "subsequent" assistance, a reference which, in context, can only mean assistance rendered after the defendant has been sentenced. Thus, a unilateral decision by the government to reserve judgment on a defendant's presentence assistance in order to secure his post-sentence assistance disrupts the careful balance struck by Congress and the Sentencing Commission and impermissibly melds what should be two discrete determinations into one somewhat entropic evaluation.[7]

We need not paint the lily. An analogous problem was recently faced by the Eleventh Circuit, which held in a well-reasoned opinion that a sentencing court may not postpone its ruling on whether to depart downward as requested in a government motion filed pursuant to U.S.S.G. § 5K1.1 in order to see if the defendant would keep his promise and provide the agreed-upon assistance. *Howard*, 902 F.2d at 897. The appellate court wrote that the methodologies of section 5K1.1 and Rule 35(b)

> are substantially different with respect to timing. Section 5K1.1 is a sentencing tool; at the time of the original sentencing, the court may sentence the defendant below the guideline range on a motion from the government.... Rule 35(b) operates *after* sentence has been imposed. It allows the court to *resentence* the defendant to reflect substantial assistance rendered after imposition of the initial sentence.... When a district court postpones a section 5K1.1 ruling, it conflicts with this temporal framework.

*Id.* at 896; *accord United States v. Francois*, 889 F.2d 1341, 1345 (4th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 1822, 108 L.Ed.2d 951 (1990). We agree. And we believe it follows inexorably that what is forbidden to the court is likewise forbidden to the prosecution: where section 5K1.1 is in play, the prospect of Rule 35(b) relief in the future cannot be allowed to alter or influence the decisions of the prosecution, or the deliberations of the court, at sentencing. *Cf. United States v. Brennan*, 629 F.Supp. 283, 304 (E.D.N.Y.1986) (Weinstein, J.) ("Imposition of a heavy sentence greater than would otherwise be warranted, on the theory that it will be reduced pursuant to Rule 35 of the Federal Rules of Criminal Procedure if the defendant cooperates in the future investigations, is not appropriate.").

---

7. This is not to say that, on a Rule 35(b) motion for sentence reduction, the court may not assay the totality of a defendant's cooperation. Nor do we mean to imply that, at the original sentencing, a prosecutor must necessarily buy a pig in a poke; at that stage, the government may, if the situation warrants, permissibly conclude that a defendant's presentence cooperation has not been "substantial" for purposes of section 5K1.1 on the basis that the help provided has yet to bear fruit. But, the government may not defer a determination as to the substantiality of a defendant's assistance on the ground that it would be premature to make such a judgment. At the time of sentencing, a yes-or-no decision must be made on whether to file a section 5K1.1 motion; and that decision must be based on a good faith evaluation of the assistance rendered to that date.

In this case, it is apparent that the government's inaction stemmed largely from a misapprehension of the temporal framework of U.S.S.G. § 5K1.1. We understand that the government provided three other reasons for eschewing a departure motion. *See supra* pp. 57–58. Nonetheless, judges have no special skill at peering into crystal balls. Confronted, as we are, with a situation where the government openly concedes that the availability of a subsequent Rule 35(b) motion figured significantly in its determination to defer a yes-or-no decision under section 5K1.1, we hesitate to guess whether, withdrawing that element from the equation, the prosecution's stance would remain the same.[8] Caution seems particularly advisable, moreover, because a disregard of section 5K1.1's temporal mandate touches upon a criminal defendant's due process rights. Hence, we believe that vacation of Drown's sentence and a remand for resentencing would best serve the interests of justice. *Cf., e.g., United States v. Diaz–Bastardo,* 929 F.2d 798, 800 (1st Cir.1991) (suggesting need for resentencing if a reviewing court, having found that a departure sentence "rests on a combination of valid and invalid grounds," is unable to determine with confidence "that removal of the inappropriate ground would [be unlikely] to alter ... the sentence rightfully to be imposed").

## IV. CONCLUSION

We need go no further. Because the government's principal stated basis for declining to file a motion for a downward departure pursuant to U.S.S.G. § 5K1.1 conflicted with the temporal operation of that provision, the defendant's sentence was "imposed in violation of law." 18 U.S.C. § 3742(a)(1). For that reason, we vacate the sentence imposed below and remand for resentencing, affording to the government the opportunity to consider afresh the substantiality of the defendant's assistance at the time of sentencing.

We intimate no view as to whether a government motion under U.S.S.G.

§ 5K1.1 is or is not in order. That is a matter committed by the guidelines to prosecutorial discretion. *See Romolo,* 937 F.2d at 23–24; *La Guardia,* 902 F.2d at 1015–16. We merely make explicit today what we have implied before: that prosecutorial discretion, while broad, is not entirely untrammelled; and, if its exercise is based on unacceptable standards, such as the infringement of protected statutory or constitutional rights, a federal court is empowered to intervene. *See Romolo,* 937 F.2d at 24 n. 4; *accord United States v. Doe,* 934 F.2d 353, 361 (D.C.Cir.1991); *United States v. Bayles,* 923 F.2d 70, 72 (7th Cir. 1991); *see generally Wayte v. United States,* 470 U.S. 598, 608, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985) (exercise of prosecutorial discretion is subject to judicial review when premised on unjustifiable standards); *United States v. Goodwin,* 457 U.S. 368, 372 & n. 4, 102 S.Ct. 2485, 2488 & n. 4, 73 L.Ed.2d 74 (1982) (similar).

*The defendant's conviction is affirmed, his sentence is vacated, and the case is remanded to the district court for further proceedings consistent herewith.*

---

8. Our reticence is heightened by two other circumstances. The first is that the government, both at sentencing and on appeal, acknowledged that its view of Drown's cooperation as inchoate was the most salient reason for its decision not to file a departure motion. The second is that the three remaining bases for withholding action under U.S.S.G. § 5K1.1 all occurred *before* the agreement to provide the assistance now at issue was signed.