**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Truong Quang QUACH, Defendant
Appellant.**

**No. 01–10532.**

United States Court of Appeals,
Ninth Circuit.

Submitted July 12, 2002.[*]

Filed Sept. 13, 2002.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Julie Elizabeth Mumma, Sacramento, California, for the defendant-appellant.

Kenneth J. Melikian and R. Steven Lapham, Assistant United States Attorneys, Sacramento, California, for the plaintiff-appellee.

Before FISHER and PAEZ, Circuit Judges, and WHELAN, District Judge.**

## OPINION

PAEZ, Circuit Judge.

Defendant Truong Quang Quach ("Defendant") appeals his 30–month sentence for misprision of felony, which the district court imposed after he pled guilty pursuant to a written plea agreement. Defendant asserts that the government breached the plea agreement at the sentencing hearing (1) by making a statement in violation of its obligation to recommend sentencing at the low end of the applicable United States Sentencing Guidelines range, and (2) by not filing a motion pursuant to § 5K1.1 of the Sentencing Guidelines for a downward departure for his substantial assistance to the government.

We conclude that the government complied with its obligation to recommend that Defendant be sentenced at the low end of the Sentencing Guidelines. We hold, however, that the government failed to make the requisite determination whether Defendant had provided substantial assistance prior to sentencing to warrant a § 5K1.1 motion. Although we hold that the government erred by refusing to make this determination, we express no view about whether the government should have moved for a downward departure un-

** The Honorable Thomas J. Whelan, United States District Judge for the Southern District of California, sitting by designation.

der § 5K1.1. Accordingly, we vacate Defendant's sentence. In light of the district judge's unequivocal statement that he would have denied such a motion even if the government had made it, we direct that the case be reassigned to a different district judge.

## I. Procedural History

On August 20, 1999, one year after being indicted for misprision of felony, 18 U.S.C. § 4, and for making false statements, 18 U.S.C. § 1001, Defendant pled guilty to misprision of felony pursuant to a written plea agreement. The plea agreement provided that the government would recommend that Defendant be sentenced at the low end of the Sentencing Guidelines range calculated and recommended by the United States Probation Office. The agreement also provided that if Defendant "cooperat[ed] fully and provid[ed] substantial assistance to the government," the government "w[ould] move" pursuant to § 5K1.1 of the Sentencing Guidelines for a downward departure of as low as one-third of the sentence imposed (i.e., up to a two-thirds downward departure). The plea agreement defined "cooperation" as:

(1) respond truthfully and completely to all questions posed to [Defendant] by law enforcement personnel; (2) attend all meetings, grand jury sessions, trials, and other court proceedings at which [Defendant's] presence is requested by the government or compelled by subpoena or court order; (3) testify truthfully before any grand jury, at trial, or any other court proceeding which [Defendant] is requested or required to attend; (4) produce voluntarily any and all

documents, records, or other tangible evidence the government requests; (5) assist the government in its efforts to apprehend fugitives Trung Pham and Tu Truong; (6) never falsely inculpate or exculpate anyone; and (7) not participate in any criminal activity during the time period that [Defendant] is cooperating with the government.

Additionally, if Defendant provided information that was the but for cause of the apprehension of fugitive Pham, the government was obligated to move for a sentence of probation pursuant to either § 5K1.1 or Rule 35(b) of the Federal Rules of Criminal Procedure.[1]

Defendant was initially scheduled to be sentenced on January 26, 2000. After having granted numerous continuances, at a hearing on January 31, 2001, the district court expressed its concern with the length of time that Defendant's case had been pending. The following exchange occurred at that hearing, which is the basis for Defendant's argument that the government breached its obligation to recommend sentencing at the low end of the Sentencing Guidelines:

THE COURT: And I am not inclined to sentence to anything lower than the top of the guidelines in [Defendant's] case. And that would hold true whether I sentence him after all of these other cases are over or whether I sentence him today. As a matter of fact, I would think that he would be more valuable to [the government] as a witness if he's going to testify at some future trial where he can say I've already been sen-

---

1. Rule 35(b) provides in pertinent part:
   If the Government so moves within one year after the sentence is imposed, the court may reduce a sentence to reflect a defendant's subsequent substantial assistance in investigating or prosecuting another person.... The court may consider a government motion to reduce a sentence made one year or more after the sentence is imposed if the defendant's substantial assistance involves information or evidence not known by the defendant until one year or more after sentence is imposed.

tenced by the Court, and there's nothing more the government can do for me. GOVERNMENT: I understand that, your Honor. Your Honor, I can only indicate this: Our position, that is, the government's, is not necessarily inconsistent with the Court's with regards to the defendant's ultimate sentencing. I did indicate in the plea agreement to [defense counsel], however, that she could make an argument for a lower sentence, and she won't really actually be able to do so unless and until time has passed with regard to that other case.

On September 5, 2001, Defendant was finally sentenced. At the sentencing hearing, the district court rejected Defendant's argument that the government violated the plea agreement at the January 31 hearing by agreeing with the court that Defendant should be sentenced at the high end of the Sentencing Guidelines range.

The court then asked for the government's sentencing recommendation, and the government recommended sentencing at the low end of the Sentencing Guidelines range. The government also indicated that, after resolution of a co-defendant's case, it might file a motion under Rule 35(b) of the Federal Rules of Criminal Procedure requesting that Defendant's sentence be reduced.

Defendant argued that the government was obligated to bring a § 5K1.1 motion at that time. The district court then asked the government to make the motion. The government refused, stating that it would not do so because Defendant had not "completed" his cooperation. In response, the court told Defendant that if he had interpreted the plea agreement otherwise, he could withdraw his plea. Defendant declined to withdraw his plea. The district court then sentenced him to 30 months in prison.

## II. Standard of Review

■ We review de novo a district court's interpretation of a plea agreement. *United States v. Salemo*, 81 F.3d 1453, 1460 (9th Cir.1996). There is some uncertainty in our case law about the standard of review—clear error or de novo—for determining whether the government has breached a plea agreement. *See United States v. Trapp*, 257 F.3d 1053, 1056 (9th Cir.2001) (citing *United States v. Mondragon*, 228 F.3d 978, 980 (9th Cir.2000), which compares *United States v. Schuman*, 127 F.3d 815, 817 (9th Cir.1997) (de novo standard), with *Salemo*, 81 F.3d at 1460 (clearly erroneous standard)). In *Trapp*, we explained that we could not, nor was it necessary, to determine which standard governed. *See* 257 F.3d at 1056. Similarly, here, we conclude that the result is the same under either standard.

## III. Discussion

### A. The Government's Recommendation Regarding Sentencing at the Low End of the Sentencing Guidelines Range

■ Defendant contends that, by representing to the district court that it did not object to a sentence at the high end of the Sentencing Guidelines range, the government breached the plea agreement. The government does not dispute that it was required to recommend a sentence at the low end of the range, but argues that it complied with its obligation.

■ "Plea agreements are contracts," and the government must comply with the terms of the agreement. *United States v. Johnson*, 187 F.3d 1129, 1134 (9th Cir. 1999). "When the government agrees to make a certain recommendation to the sentencing court, it is bound by the agreement to make that particular recommendation." *Id.* at 1135. We construe ambigui-

ties in favor of the defendant. *United States v. Camarillo–Tello*, 236 F.3d 1024, 1026 (9th Cir.2001). The government's agreement to recommend a certain sentence or downward departure serves an important function—it presents a "united front," which is more persuasive than the defendant alone arguing for a particular sentence or a departure. *Id.* at 1028. The sentencing court, of course, still has discretion to reject the joint recommendation. *Id.*

To determine whether the government's statement here violated the plea agreement, we ask whether it represents an "attempt by the government to influence the district court" to impose a harsher sentence than the one that the government agreed in the plea agreement to recommend. *United States v. Mondragon*, 228 F.3d 978, 980–81 (9th Cir.2000). We conclude that it did not.

At the January 31 hearing, seven months before sentencing, the government requested that sentencing be postponed pending resolution of fugitives Pham's and Truong's cases, in which Defendant was cooperating with the government. The district court stated that it had been almost two years since Defendant entered his plea and that it wanted to enter judgment and sentence Defendant. As noted, the court explained that it was "not inclined to sentence [Defendant] to anything lower than the top of the guidelines ... whether I sentence him after all of these other cases are over or whether I sentence him today." The government responded:

> I understand that, your Honor. Your Honor, I can only indicate this: Our position, that is, the government's, is not necessarily inconsistent with the Court's with regards to the defendant's ultimate sentencing. I did indicate in the plea agreement to [defense counsel], however, that she could make an argument for a lower sentence, and she won't really

actually be able to do so unless and until time has passed with regard to that other case.

As the government concedes, its response is "not a model of clarity." In fact, the government, Defendant, and the district court all interpret it differently. Defendant argues that the government was informing the court that its recommendation would not be inconsistent with a sentence at the high end of the Guidelines. The government contends that this statement refers to "when the defendant should be sentenced rather than what sentence he should ultimately receive." The district court stated that it understood the comment to be an acknowledgment that the government was required to recommend a sentence at the low end of the Sentencing Guidelines range but that the court ultimately had discretion to determine Defendant's sentence.

These three reasonable interpretations demonstrate the ambiguity of the government's statement. If the government were attempting to influence the district court's sentencing decision, it would likely have done so at the sentencing hearing rather than a hearing more than seven months before sentencing. In fact, at sentencing the government recommended, consistent with the plea agreement, that Defendant be sentenced to a term of imprisonment at the low end of the applicable range. Thus, we cannot conclude that the government was attempting to influence the district court to impose a greater sentence. *Cf. Mondragon*, 228 F.3d at 980–81 (holding, in light of the government's promise not to make a recommendation during sentence, that the government's statement about the "serious nature" of the defendant's crimes and his criminal history constituted an "attempt ... to influence the district court"); *Johnson*, 187 F.3d at 1135–36 (holding that the govern-

ment's introduction of a victim impact statement from one of the defendant's previous crimes, which "had nothing to do with the crime to which [the defendant] pleaded guilty," was introduced "solely for the purpose of influencing the district court to sentence [the defendant] more harshly").

## B. Section 5K1.1 Motion

█ Defendant argues that the government was required to move for a two-thirds sentence reduction in return for Defendant's "debriefing and for his assistance in apprehending fugitive Pham." He contends that he provided the government with a telephone number and a witness in Florida that were "key" in Pham's capture.[2] The government counters that Defendant had not "completed his cooperation with the government at the time of sentencing," and thus it was not required to move for a downward departure under § 5K1.1 at that time.

█ Under § 5K1.1, a district court may depart downward "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense[.]" The government must determine at sentencing whether a defendant has provided substantial assistance up to that date to warrant a § 5K1.1 motion, and it cannot defer its decision to a later date. *See United States v. Drown,* 942 F.2d 55, 59 & n. 7 (1st Cir.1991).

█ In *Drown,* the First Circuit explained that, by deciding to postpone its evaluation of the defendant's assistance until after sentencing when the defendant's cooperation was complete, the government misinterpreted the purpose of a § 5K1.1 motion. *Id.* at 59. The government "improperly merge[d] the temporal boundaries established in [§ ] 5K1.1 and [Rule 35(b) of the Federal Rules of Criminal Procedure]." *Id.* A § 5K1.1 motion rewards a defendant for his assistance prior to sentencing, whereas a Rule 35(b) motion rewards a defendant for post-sentencing assistance. *Id.* The possibility of Rule 35(b) relief in the future cannot influence the government's or the district court's decision at sentencing about § 5K1.1 relief. *Id.*

As in *Drown,* the government here wanted to postpone its decision to move for a downward departure for Defendant's substantial assistance. It explained to the district court that Defendant's "cooperation is not complete unless and until the [fugitive's] case has been finalized." The government informed the district court that it would make the motion later "in the form of a Rule 35." We hold that it was required to make a "good faith evaluation" of Defendant's assistance up to the date of sentencing and to determine whether it warranted a § 5K1.1 motion. *Id.* at 59 n. 7.

Pursuant to the plea agreement, if Defendant "cooperat[ed] fully" and provided "substantial assistance," the government was required to move for a sentence reduction pursuant to § 5K1.1 up to as low as one-third of the sentence imposed. At the time of sentencing, the government did not dispute that Defendant had cooperated to the extent asked of him. For example, the plea agreement defines cooperation in pertinent part as: "testify truthfully before any grand jury, at trial, or any other court proceeding *which [Defendant] is requested or required to attend[.]* " (Em-

---

**2.** As noted, the plea agreement provided that if Defendant supplied the government with information that was the but for cause of Pham's capture, the government was required to recommend straight probation. Defendant, however, requested only a two-third reduction in his sentence.

phasis added.) The government had not yet asked Defendant to testify in any proceeding, and thus he had not violated the plea agreement. *Cf. United States v. Burrows,* 36 F.3d 875, 884 (9th Cir.1994) (holding that the government did not err by concluding that the defendant did not provide substantial assistance because the defendant did not comply with every request by the government, including testifying for the government); *United States v. Mena,* 925 F.2d 354, 355–56 (9th Cir.1991) (holding that the district court was not required to sua sponte grant a downward departure when the government refused to bring a § 5K1.1 motion because the defendant had refused to testify against the person who he had helped the government capture). There was no requirement that Defendant "complete" cooperation prior to sentencing. Thus, the government misinterpreted the plea agreement. Accordingly, we vacate Defendant's sentence and remand for resentencing, thus permitting the government to determine whether Defendant provided substantial assistance prior to sentencing.

█ Although the government erred in its analysis of whether Defendant cooperated and it failed to make the requisite determination of whether Defendant provided substantial assistance, we note that, pursuant to the plea agreement, the government still retains the "sole discretion" to decide whether Defendant provided substantial assistance—so as long as that decision is made in good faith—and, depending on the nature of the assistance, the extent of any departure from the Sentencing Guidelines range that it would recommend. We do not "intimate [any] view as to whether a government motion under [ ] § 5K1.1 is or is not in order." *Drown,* 942 F.2d at 60.[3]

█ Although we generally remand for resentencing to the original district judge, we remand to a different judge if there are "unusual circumstances." *Mikaelian,* 168 F.3d at 387. We use a three-factor test to determine whether it is appropriate to remand to a new judge for resentencing:

(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving appearance of fairness.

*Id.* (quoting *United States v. Alverson,* 666 F.2d 341, 349 (9th Cir.1982)). "The first two of these factors are of equal importance, and a finding of one of them would support a remand to a different judge." *United States v. Hanna,* 49 F.3d 572, 578 (9th Cir.1995) (quoting *United States v. Sears, Roebuck & Co.,* 785 F.2d 777, 780 (9th Cir.1986)).

Considering the second factor, we remand with direction that the case be reassigned to a different district judge for resentencing. At the January 31 hearing,

---

3. If the government determines that Defendant did not provide substantial assistance, then Defendant could challenge this decision by showing that the government's determination was arbitrary or made in bad faith. *See United States v. Goroza,* 941 F.2d 905, 908 (9th Cir.1991) (holding that the government cannot arbitrarily or in bad faith refuse to bring a § 5K1.1 motion). Defendant could then request an evidentiary hearing, and the district court would determine whether he did in fact provide substantial assistance as part of its bad-faith inquiry. *See United States v. Mikaelian,* 168 F.3d 380, 385 (9th Cir.1999). If Defendant does not contend that the government's decision is arbitrary or in bad faith, then the government's decision would be unreviewable. *Id.* at 385.

the district judge stated that Defendant was fortunate that he "received the benefit of being allowed to plead to misprision of a felony as contrasted with being an accessory to the crime;" Defendant faced a sentence of 27 to 33 months, whereas the punishment for being an accessory "would probably carry a maximum penalty of life in prison, if not the death penalty." The judge then explained that he was "not inclined to sentence to anything lower than the top of the guidelines[.]" Similarly, at sentencing, the district judge stated, "I will tell you that if the government had made the [§ 5K1.1] motion today, I would have denied it." In light of these comments, we conclude that remand to a different judge would preserve the appearance of justice in light of the district judge's "potential bias" against granting a downward departure if the government files a § 5K1.1 motion. *Cf. United States v. Barnes*, 278 F.3d 644, 655 (6th Cir.2002) (Suhrheinrich, J., dissenting) (explaining that the case should have been remanded to the original judge because there was no evidence in the record "point[ing] to any potential bias against the Government's recommendation").

By remanding to a different judge, we do not imply that the district judge erred. *See Johnson*, 187 F.3d at 1136 n. 7 ("We remand to a different judge for resentencing because the case law requires us to do so. We intend no criticism of the district judge by this action, and none should be inferred.").

## IV.  Conclusion

The government erred by failing to assess Defendant's substantial assistance at the time of sentencing to determine whether it should have moved for a downward departure under § 5K1.1. Accordingly, we vacate Defendant's sentence and remand to a new judge for resentencing.

**VACATED and REMANDED.**