**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Issam AWAD, Defendant–Appellant.**

**No. 01–50408.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 2003.

Filed June 9, 2004.

584

Terri A. Law, Sherman Oaks, CA, for the defendant-appellant.

Thomas P. O'Brien, Assistant United States Attorney, Los Angeles, CA, for the plaintiff-appellee.

Before HALL, O'SCANNLAIN, and McKEOWN, Circuit Judges.

HALL, Senior Circuit Judge.

Issam Awad ("Awad" or "defendant") appeals the sentence imposed on him following his guilty plea to one count of illegally possessing pseudoephedrine in violation of 21 U.S.C. § 841(d)(2). On appeal, Awad raises two arguments. First, he argues that the district court abused its discretion under *United States v. Quach*, 302 F.3d 1096 (9th Cir.2002), by ruling on the government's motion for a downward departure under U.S.S.G. § 5K1.1 without requiring the government to furnish a more comprehensive analysis of the cooperation Awad was providing. Second, Awad contends that the district court clearly erred in refusing to characterize him as a "minimal participant" in the offense, which would justify a further downward departure pursuant to U.S.S.G. § 3B1.2.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We conclude that the district court abused its discretion by imposing sentence while laboring, along with the government, under a mistaken view that the government could later assess the defendant's pre-sentence cooperation by a future Rule 35(b) motion. As to Awad's second argument, we conclude that the district court's refusal to characterize Awad as a "minimal participant" was not a clearly erroneous decision.

## I

On January 19, 2001, Awad was indicted on two counts by a federal grand jury, along with his co-defendants Ashraf Hamed and Abdelrahim Nassar. Count One alleged that the defendants conspired to possess pseudoephedrine[1] in violation of 21 U.S.C. § 846. Count Two alleged that the defendants were in possession of pseudoephedrine in violation of 21 U.S.C. § 841(d)(2). The indictment stemmed from an operation by the Drug Enforcement Administration (DEA), which from June 28, 2000, to January 5, 2001, developed information regarding the trafficking of pseudoephedrine from Columbus, Ohio, to Los Angeles, California.

On March 16, 2001, Awad entered into a plea agreement with the United States Attorney for the Central District of California, in which he agreed to plead guilty to Count Two of the indictment. The plea agreement did not obligate the U.S. Attorney to seek any sentence reduction in exchange for Awad's assistance with additional investigations.

On April 26, 2001, a Presentence Report was issued by Awad's probation officer with the recommendation that Awad be sentenced at an offense level of 28, which represented a Base Offense level of 30, less a two-level downward departure for

---

1. Pseudoephedrine, a listed chemical, is a crucial component in the manufacture of methamphetamine, a Schedule II controlled substance. 21 U.S.C. § 812(c).

acceptance of responsibility. On May 16, Awad filed an objection in which he argued that he should be entitled to further downward departures. The probation officer considered each of Awad's arguments, but did not amend his previous recommendation.

On May 17, 2001, the U.S. Attorney filed a Motion for Downward Departure pursuant to U.S.S.G. § 5K1.1. The government recommended a one-level downward departure to reward the "helpful" cooperation Awad had provided with regard to an ongoing DEA investigation in Florida. In a footnote, the government acknowledged that Awad had also provided information about drug trafficking in other states, but concluded that defendant's assistance in those matters could "not be measured at the present time." Instead of attempting to evaluate this aspect of Awad's cooperation, the government indicated that it would "file an additional downward departure motion pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure should the occasion warrant in the future."

Awad's sentencing hearing was conducted on June 19, 2001. At that hearing, Awad asked the judge to delay ruling[2] on the government's § 5K1.1 motion until the full extent of Awad's cooperation with the government on other investigations could be evaluated. The government conceded that Awad had provided helpful information with regard to an ongoing investigation in Chicago, but recommended that the court "re-address that issue at a later date once[the government] got a full opportunity to evaluate fully defendant's cooperation." Heeding the government's request, the district court imposed a sentence of 63 months imprisonment, three years of su-

pervised release, and a special assessment of $100.

## II

### A.

▮▮▮ We review the district court's interpretation of the Sentencing Guidelines *de novo. United States v. Castillo–Rivera,* 244 F.3d 1020, 1021 (9th Cir.2001). The district court's departure from the Guideline-prescribed sentence is reviewed for abuse of discretion. *Koon v. United States,* 518 U.S. 81, 99, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).

### B.

#### 1.

When the United States Sentencing Commission ("Commission") promulgated the Sentencing Guidelines, it recognized that it could not adequately forecast every conceivable permutation of crime, and so permitted courts "to depart from a guideline-specified sentence ... when [they] find[ ] 'an aggravating or mitigating circumstance of a kind ... not adequately taken into consideration by the Sentencing Commission.'" U.S. SENTENCING GUIDELINES MANUAL ch.1, pt. A, at 6 (2002). Section 5K1.1 provides for just such a departure.

▮▮▮ Section 5K1.1 permits a court to depart from the Guideline-authorized sentence, "[u]pon motion of the government," in cases where "the defendant has provided substantial assistance in the investigation or prosecution of another person." U.S.S.G. § 5K1.1. The Guidelines "afford[ ] the sentencing judge" wide "latitude" in evaluating the "significance and usefulness of the defendant's assistance," but direct

---

**2.** Although the defendant characterizes his language as a request for a continuance, his precise language was "if the issue of coopera-tion altogether could be placed on hold until a time for a later motion. . . ."

courts to give "[s]ubstantial weight ... to the government's evaluation" of that assistance. U.S.S.G. MANUAL § 5K1.1, (a)(1), cmt. 3, cmt. background. However, because § 5K1.1 is a provision of the Sentencing Guidelines, it has no efficacy after a defendant has been sentenced. *See, e.g., Quach,* 302 F.3d at 1102 ("A § 5K1.1 rewards a defendant for his assistance prior to sentencing...."); *United States v. Howard,* 902 F.2d 894, 896 (11th Cir.1990) ("Section 5K1.1 is a sentencing tool....").

The Federal Rules of Criminal Procedure, on the other hand, take cognizance of the fact that an incarcerated criminal may provide similar "substantial assistance" to governmental authorities subsequent to the imposition of his sentence. Thus, in language which essentially mirrors that of § 5K1.1, Rule 35(b) authorizes a court, "upon the government's motion made within one year of sentencing," to reduce a defendant's sentence if "the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person." FED. R. CRIM. P. 35(b)(1) (2002).

Because both § 5K1.1 and Rule 35(b) permit sentence reduction only upon motion of the government, they invest prosecutors with considerable discretion to determine whether a defendant's cooperation warrants a recommendation of downward departure for substantial assistance. *Cf. Wade v. United States,* 504 U.S. 181, 185, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992) (The government has "a power, not a duty, to file a motion when a defendant has substantially assisted."). Nevertheless, even the exercise of discretion requires prosecutors to conform to the temporal dictates of the two sentence reduction schemes. The interplay between § 5K1.1, a provision of the Sentencing Guidelines which has no efficacy after a defendant has been sentenced, and Rule 35(b), which re-

wards a defendant's substantial assistance rendered *after* sentencing, mandates two separate inquiries by prosecutors.

Awad contends that our holding in *United States v. Quach,* 302 F.3d 1096 (9th Cir.2002), substantially curtailed a prosecutor's discretion by requiring the government "to make a 'good faith evaluation' of Defendant's assistance up to the date of sentencing and to determine whether it warranted a § 5K1.1 motion." 302 F.3d at 1102. In *Quach,* we considered the appeal of a defendant who had pled guilty to misprision of felony pursuant to a written agreement with the government. According to the terms of the agreement, if the defendant provided substantial assistance to authorities regarding additional investigations, the government " 'would move' pursuant to § 5K1.1 of the Sentencing Guidelines for a downward departure" in the defendant's sentence. *Id.* at 1099. Although the defendant "had cooperated to the extent asked of him" at the time of his sentencing hearing, the government refused to submit a § 5K1.1 motion on the ground that Quach "had not completed his cooperation." *Id.* at 1102 (internal quotation marks omitted). Rather than filing a § 5K1.1 motion, the government sought the district court's permission to withhold evaluation of the defendant's assistance until after it had been completed.

Relying on the First Circuit's decision in *United States v. Drown,* 942 F.2d 55, 59 (1st Cir.1991), we held in *Quach* that "[t]he possibility of Rule 35(b) relief in the future cannot influence the government's or the district court's decision at sentencing about § 5K1.1 relief." *Quach,* 302 F.3d at 1102. In *Drown,* the First Circuit addressed a sentencing challenge similar to Awad's. Drown, like Awad, offered the government useful information about a drug trafficking operation. Drown's prosecutor, like Awad's, refused to "assess the

defendant's cooperation" for the purposes of making a § 5K1.1 motion. *Drown*, 942 F.2d at 58. The government considered Drown's cooperation "incomplete" and believed that it could later reward his presentence cooperation in a Rule 35(b) motion. *Id.* Because it was "apparent that the government's inaction stemmed largely from a misapprehension of the temporal framework of U.S.S.G. § 5K1.1" and Rule 35(b), the court vacated Drown's sentence. *Id.* at 60.

While the government's obligation in *Quach* stemmed partially from our conclusion that the government's failure to make a "good faith" assessment of the assistance provided by the defendant up to the date of sentencing violated the terms of the plea agreement, *id.* at 1102–03, we relied explicitly upon *Drown*, in which there was no such agreement, for our holding on the temporal interplay between § 5K1.1 and Rule 35(b). In *Quach*, we recognized that the temporal distinction between § 5K1.1 and Rule 35(b) is not an empty one. While a § 5K1.1 motion "rewards a defendant for his assistance *prior to sentencing*," a "Rule 35(b) motion rewards a defendant for *post-sentencing* assistance." *Quach*, 302 F.3d at 1102 (emphases added). Thus, we held impermissible the government's decision to "postpone" the § 5K1.1 evaluation beyond sentencing. *Id.* at 1102.

Several of our sister circuits that have considered these issues have acknowledged that § 5K1.1 and Rule 35(b) operate to provide substantially similar relief at entirely different stages of the process. *See Drown*, 942 F.2d at 59 ("The language, structure, context, and operation of these provisions leaves little doubt that [§ 5K1.1] was designed to recognize, and in an appropriate case to reward, assistance rendered *prior* to sentencing.") (emphasis in original); *United States v. Alvarez*, 115 F.3d 839, 841 (11th Cir.1997)

("Section 5K1.1 is used at sentencing to reflect substantial assistance *rendered up until that moment*.") (citation omitted) (emphasis in original); *United States v. Johnson*, 241 F.3d 1049, 1054 (8th Cir. 2001) ("A defendant ... [can] provid[e] post-sentencing substantial assistance in exchange for a Rule 35(b) motion."); *United States v. Gangi*, 45 F.3d 28, 30 (2d Cir.1995) (Rule 35(b) "is based on substantial assistance *after* sentencing" (emphasis added)); *United States v. White*, 71 F.3d 920, 926–27 (D.C.Cir.1995) (Rule 35(b) limits a prosecutor to "move after sentencing for *post-sentencing assistance*" (emphasis added)); *United States v. Martin*, 25 F.3d 211, 216 (4th Cir.1994) (upholding the district court's determination that Rule 35(b) "grants the sentencing judge the authority to reduce a defendant's sentence only for substantial assistance *rendered subsequent to sentencing*" (emphasis added)); *United States v. Mitchell*, 964 F.2d 454, 461 (5th Cir.1992) ("[T]he Government may move to resentence a defendant to reflect substantial assistance rendered after the original sentence" under Rule 35(b).); *United States v. Mittelstadt*, 969 F.2d 335, 337 (7th Cir.1992) ("As is plain from the text of Rule 35(b), ... the rule is designed to recognize assistance rendered *after* the defendant is sentenced."); *United States v. Howard*, 902 F.2d 894, 896 (11th Cir.1990) ("Rule 35(b) ... allows the court to resentence the defendant to reflect *substantial assistance rendered after imposition of the initial sentence*." (emphasis altered from original)).

*Quach* and *Drown* control Awad's case. The only difference between Awad's predicament and Drown's is legally insignificant. In Awad's case, the prosecutor made a § 5K1.1 motion based on a portion of Awad's cooperation but refused to evaluate the significant and "much more helpful" remainder of Awad's assistance, whereas in *Drown* the prosecutor made no

motion at all. In both cases, the government's refusal to evaluate, and the court's willingness to impose sentencing anyway, stemmed from the same "grave misconception" of the scope of Rule 35(b). *See Middelstadt,* 969 F.2d at 337. Here, as in *Drown,* "the government may not defer a determination as to the substantiality of a defendant's assistance on the ground that it would be premature to make such a judgment." *Drown,* 942 F.2d at 59 n. 7.

Thus, we agree with Awad that his sentence cannot be affirmed. Awad *rendered* his assistance to the government prior to his sentencing. The clear intent of our holding in *Quach* was to ensure that the defendant have an opportunity to accrue the benefits of that assistance through the

§ 5K1.1 process. An erroneous understanding by both the government and the court of Rule 35(b)'s applicability to Awad's presentence cooperation permeated the sentencing proceedings and caused the court to impose sentence based upon an incomplete record.[3] The court's decision to sentence in the face of an incomplete § 5K1.1 motion undermined the clear temporal framework established by the interplay of § 5K1.1 and Rule 35(b).[4]

### 2.

Here, the government admitted that Awad's assistance justified the filing of a § 5K1.1 motion seeking downward departure. However, the motion filed on Awad's behalf only accounted for a portion

**3.** The government contends that it evaluated the "value of the assistance provided by defendant through sentencing" in making its recommendation for a one-level departure pursuant to § 5K1.1, "leaving open the possibility that his additional cooperation and the government's further investigation could warrant more cooperation credit." The record belies that contention. The government conceded that Awad had provided "much more helpful information" regarding additional investigations, but because that cooperation could not "be measured at the present time," advised the court to "re-address that issue at a later date." Had the government actually evaluated Awad's assistance at the point of sentencing and concluded that it was insufficiently substantial to justify a recommendation for any further departure from the Guideline-prescribed sentence, its argument would be more forceful. However, the government's representation to the court was that it simply could not evaluate the substantiality of Awad's assistance *at all* until some undefined future date.

**4.** We do not mean to suggest that Awad's presentence cooperation could not also be considered in the context of a subsequent Rule 35(b) motion. Indeed, both the 1998 and 2002 amendments to Rule 35(b) make explicit that "[i]n evaluating whether the defendant has provided substantial assistance, the court

may consider the defendant's presentence assistance." FED. R. CRIM. P. 35(b)(3) (2002) (incorporating without substantive change the 1998 amendments to Rule 35(b)). However, in order to qualify for a post-sentencing reduction pursuant to Rule 35(b), the defendant is required to provide at least a scintilla of post-sentencing assistance. In order to allay concerns about "a defendant who has provided, on the whole, substantial assistance," but who provided only a nonsubstantial portion of it *after* sentencing, and could not therefore benefit from either § 5K1.1 or Rule 35(b) relief, the Advisory Committee clarified Rule 35(b). FED. R. CRIM. P. 35(b) advisory committee's notes. Specifically, the Committee adopted the approach set out by Judge Ellis' concurrence in *United States v. Speed,* 53 F.3d 643, 647–49 (4th Cir.1995) ("[W]hile some amount of post-sentencing assistance is required to trigger the possibility of a Rule 35(b) reduction, once triggered, the sentencing judge should be free to consider the full range and extent of a defendant's cooperation, including the cooperation rendered prior to sentencing."). Thus, even if Awad's information regarding the Chicago investigation were deemed insufficiently helpful to justify a downward departure under § 5K1.1 at sentencing, it could nonetheless be considered along with any post-sentencing assistance in order to determine whether he might be entitled to Rule 35(b) relief.

of his assistance.[5] Although the court was on notice that the government misunderstood the temporal interplay between § 5K1.1 and Rule 35(b), it nevertheless imposed Awad's sentence based on the government's incomplete motion. In so doing, the district court abused its discretion, necessitating our remand for re-sentencing.

◼ Nevertheless, while we hold that it was an abuse of discretion for the district court to rule on the government's § 5K1.1 motion when it was based on an incomplete analysis of Awad's cooperation, we take this opportunity to clarify what a district court must consider in pronouncing a sentence in circumstances such as those presented here. In this case, Awad provided information regarding an ongoing DEA investigation in Chicago. If at sentencing, that information had not been sufficiently developed to constitute "substantial assistance," or if the government had

simply declined to offer a § 5K1.1 motion,[6] the court would not be compelled to postpone sentencing indefinitely in order to allow the investigation to run its course. Such a requirement would impose inordinate burdens on the district court, and inure to the benefit of criminal defendants whose information could not be readily verified.

◼ The court need not require the government to fully exhaust all its investigative capacities in evaluating a defendant's assistance. Instead, if the government elects to make a § 5K1.1 motion, the court must simply insist that the motion be based upon an evaluation of the assistance that has been rendered by the defendant up to the time of sentencing. But where the government's misapprehension that the court could "re-address" the issue of pre-sentence cooperation "at a later date" betrays that its evaluation is plainly infused with legal error as to the temporal

---

**5.** The government maintains that, even if it had assessed the value of Awad's cooperation at the sentencing hearing, it would not have recommended anything more than a one-level departure. To substantiate this claim, the government points out that it has not filed a Rule 35(b) motion on the defendant's behalf and "has no plans to do so." Given that a Rule 35(b) motion is completely discretionary, it is unclear how the government's failure to file one *proves* that the defendant's additional prior cooperation would not have warranted a further downward departure if an assessment of that cooperation were compelled by the court for the purposes of a § 5K1.1 motion. Moreover, even if the government were to file a Rule 35(b) motion, the defendant's pre-sentence proffers could not permissibly form the basis for such a motion in the absence of some additional post-sentence assistance.

**6.** We emphasize that our review of the government's decision whether to file a substantial assistance motion is generally limited where, as here, the parties have entered no agreement on the subject. As the Supreme Court has stressed, there is "no reason why

courts should treat a prosecutor's refusal to file a substantial-assistance motion differently from a prosecutor's other decisions...." *Wade,* 504 U.S. at 185, 112 S.Ct. 1840. Federal courts only "have authority to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive." *Id.* at 185–86, 112 S.Ct. 1840. Thus a decision allegedly based on race or religion is clearly reviewable, *id.* at 186, 112 S.Ct. 1840, as is a decision that breaches a plea agreement. *See United States v. Martin,* 25 F.3d 211, 217 (4th Cir.1994) ("If the government breaches express or implied terms of a plea agreement, a violation of due process occurs.") (citing *Mabry v. Johnson,* 467 U.S. 504, 509, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984); *Santobello v. New York,* 404 U.S. 257, 262–63, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *United States v. White,* 71 F.3d 920 (D.C.1995)). Generally, however, the government may base its decision on nothing more than "its rational assessment of the cost and benefit that would flow from moving," regardless of the assistance rendered. *Wade,* 504 U.S. at 187, 112 S.Ct. 1840.

bounds of § 5K1.1 and Rule 35(b), the court accedes to the same error and thereby abuses its discretion by imposing sentence.

## III

The Sentencing Guidelines recognize that when an offense is committed by multiple criminal actors, some participants may be substantially more or less culpable than others. Section 3B1.2 permits courts to reduce a defendant's sentence if the defendant played a "mitigating role" in the commission of the offense. U.S.S.G. § 3B1.2. Specifically, § 3B1.2 provides for a downward adjustment of four levels where a defendant was a "minimal participant" in a crime, or two levels where he was a "minor participant." *Id.* However, the Commentary to the Guidelines makes clear that the role adjustment for minimal participation is a tool which should "be used infrequently," U.S.S.G. § 3B1.2 cmt. n. 4, and this court has emphasized that any downward role adjustment should be restricted to those cases presenting "exceptional circumstances." *United States v. Davis*, 36 F.3d 1424, 1436 (9th Cir.1994). The defendant bears the burden of proving that he is entitled to a downward adjustment based on his role in the offense. *Id.*

As specified by the Guidelines, a defendant may only qualify for a downward role adjustment where he is "substantially less culpable than the average participant." U.S.S.G. § 3B1.2 cmt. n. 3(A). A defendant is a "minimal participant" when his "lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others" indicates that he is "plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2 cmt. n. 4. A defendant is a "minor participant" if he "is less culpable than most other participants, but [his] role

could not be described as minimal." *Id.* at n. 5.

[9] Whether the defendant qualifies for either a minimal or minor role adjustment depends on the facts of the particular case. *United States v. Williams*, 898 F.2d 1400, 1403 (9th Cir.1990). Thus, a district court's refusal to grant a defendant's request for role reduction based on his minimal or minor role should be overturned only where the refusal was a clearly erroneous decision. *United States v. Murillo*, 255 F.3d 1169, 1179 (9th Cir.2001). Moreover, "where there are two permissible views of the evidence, the fact-finder's choice between them can not be clearly erroneous." *Hernandez v. New York*, 500 U.S. 352, 369, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).

The district court properly determined that Awad's role in the drug transaction at issue was neither minimal nor minor, since there is evidence that Awad actually brokered and facilitated the drug deal. Awad admitted that he was responsible for putting his two co-defendants, Nassar and Hamed, in touch with one another for the purpose of selling pseudoephedrine pills that would be distributed to Mexican nationals in California. Awad also indicated that prior to the meeting with the government's Confidential Source ("CS"), he and his co-defendants unloaded several cases of pseudoephedrine into the storage unit at which they were later apprehended. During negotiations at an El Segundo restaurant on January 5, 2001, Awad was introduced as Nassar's "partner," and discussed the price per case with both the CS and Nassar in his role as the "middle man." Following the negotiations, Awad and Nassar trailed Hamed and the CS to the storage facility housing the

pseudoephedrine, and drove around the facility as though they were "lookouts."

Contrary to the defendant's suggestion that he was either a minimal or a minor participant in the offense for which he was convicted, he appears to have played an integral role in the entire process. From the point at which he was contacted by Nassar, in large part because of his prior experience in distributing pseudoephedrine, Awad was a crucial player in this transaction. Even if we were persuaded by Awad's contention that he was substantially less culpable than his codefendants, we would not be permitted to reverse the district court's findings of fact absent evidence so overwhelmingly convincing that the trial court had no alternative but to find in the defendant's favor. Given the benefit of the doubt, Awad's argument still amounts to no more than one interpretation of equivocal facts. Reasonable as Awad's position may be, it is insufficient to justify reversing the district court's equally reasonable interpretation of the facts.

### IV

For the foregoing reasons, the decision of the district court is hereby VACATED, and the case is REMANDED for resentencing in accordance with this opinion.

---

* The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge, United States